482 So.2d 700 (1985)
Claudette O'NEAL
v.
C.J. BLANCHE, Administrator, Office of Employment Security, Prince Murat Motor Inn.
No. 84 CA 1076.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
*701 Thomas J. Bergman, Baton Rouge, for plaintiff-appellant Claudette O'Neal.
James A. McGraw, Baton Rouge, for defendant-appellee Office of Employment Sec.
Prince Murat Motor Inn, in pro. per.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
Plaintiff appeals from a trial court judgment affirming her disqualification for unemployment insurance benefits upon a finding by the appeals tribunal that she voluntarily left her job without good cause. LSA-R.S. 23:1601(1).

FACTS
Plaintiff, Claudette O'Neal, was employed as the executive housekeeper with the Prince Murat Motor Inn in Baton Rouge from October 6, 1982, through May 25, 1983. On May 25, 1983, Mrs. O'Neal gave her employer one week's notice of her intention to leave her job. She was told at that time to finish the day, turn in her keys, and that it was not necessary for her to return to work. Mrs. O'Neal was also promised her regular salary for the week following her notice.
On Thursday, May 19, 1983, Mrs. O'Neal was ordered by Jim Sweeney, Vice President of Southmark Hospitality Management, Inc., (the parent company of Prince Murat Inn), to prepare 300 perfect rooms in the hotel by Monday, May 23, 1983. If necessary, Mrs. O'Neal was to work through the weekend. This was a demand which Mrs. O'Neal felt was excessive and unreasonable. She was told, however, that if the task was not completed, that all inspectors (employees working directly under Mrs. O'Neal) responsible would be fired. The task was not completed, but no one was fired as a result of this.
For a period of two weeks prior to Mrs. O'Neal's resignation, the former executive housekeeper of the Prince Murat Inn, Mrs. Bobby Screws, was at the hotel talking with the management and employees. Mrs. O'Neal claims to have heard rumors that plans were under way to replace her with Mrs. Screws. In fact, Mrs. Screws was hired to replace Mrs. O'Neal the day after Mrs. O'Neal's resignation. Mrs. O'Neal claims that all of the events created an atmosphere of intimidation and pressure, specifically orchestrated by her employer to coerce her into quitting her job. Under that theory, she claims she left her employment with good cause, such that she is entitled to unemployment benefits under LSA-R.S. 23:1601(1). The original claim for benefits was denied. The denial of her claim for benefits was upheld by the Board of Review and the 19th Judicial District Court.

SPECIFICATIONS OF ERROR[1]
Plaintiff alleges seven specifications of error:
1. The Board of Review erred in limiting the issue to whether the claimant left employment because of unreasonable demands by management in relation to the job;
2. There is no evidence to support a finding of fact that appellant left her employment solely due to what she felt was an unreasonable demand;
3. The appeals referee erred in limiting cross examination of the representative *702 of the Prince Murat to matters to which she had testified;
4. The appeals referee acted improperly by refusing to permit appellant to read a prepared statement and by pretermitting the testimony of appellant's witness, Jack Conway;
5. The appeals referee's finding of fact that no inspectors were fired is contrary to the testimony;
6. The Board of Review and the district court erred in failing to consider the effect of the error which lead appellant to mistakenly agree at the hearing before the appeals referee that she had been paid for her one week notice; and,
7. The appeals referee, Board of Review, and district court erred in concluding that the Prince Murat proved that Mrs. O'Neal left her employment without good cause.

SPECIFICATION OF ERROR NO. 1
Plaintiff claims that the Board of Review erred in limiting the issue before it to whether "the claimaint left employment because of unreasonable demands by management in relation to the job." In brief, plaintiff reasons that the issue should have been whether "the Prince Murat sustained its burden of showing that Claudette O'Neal was not coerced, induced or willfully harassed into resigning on May 25, 1983."
The burden is on the employer to prove his contention that the claimant is disqualified from receiving benefits. January v. Administrator, Division of Employ. Sec., 155 So.2d 250 (La.App.3rd Cir.1963); Lee v. Brown, 148 So.2d 321 (La.App.3rd Cir. 1962). A document entitled "Separation Notice Alleging Disqualification" was filed into evidence at the hearing before the appeals tribunal. The document is a pre-printed form, which was signed by Mrs. O'Neal. Under the heading entitled "Reason for Leaving," there is a mark placed by the words "Voluntary Leaving." Below that, there is the following handwritten sentence: "5/25/83 I Claudette O'Neal executive Housekeeping turn in my week notice, and resignation."
The employee of the Prince Murat who received this document testified at the hearing. There was no dispute as to its authenticity. At this point in the hearing, the employer had made a prima facie case that Mrs. O'Neal's resignation was voluntary and, therefore, without good cause, disqualifying her from unemployment benefits. The burden then shifted to Mrs. O'Neal to show that her resignation was not "voluntary." Although Mrs. O'Neal attempted to establish that her resignation was not voluntary, she was unsuccessful, and plaintiff never rebutted her employer's prima facie case. Therefore, plaintiff's Assignment of Error No. 1 is without merit.

SPECIFICATION OF ERROR NO. 3
Plaintiff complains that she was limited by the appeals referee in her cross-examination of Mrs. Robbie Fulton, the representative of her employer, to matters to which the representative had testified on direct. At the hearing, Mrs. O'Neal was represented by Mr. Dave Lisenski, who is not an attorney.
When the referee finished questioning the witness, the following colloquy took place between her and Lisenski:
REFEREE: Do you want to cross examine?
LISENSKI: Yes.
REFEREE: Go ahead. Only on matters that she testified.
LISENSKI: Okay.
REFEREE: Which is 
LISENSKI: Relevant to what's already been said.
REFEREE: Go ahead. Just ask the question. I'll rule on it whether it's favorable or not.
As the cross-examination went on, the referee only stopped Lisenski from going into one area which the referee felt was irrelevant. Lisenski asked the witness whether the employer had originally intended to object to unemployment compensation *703 being paid to plaintiff. The referee correctly pointed out that the employer's opinion about plaintiff's eligibility for unemployment compensation was not a factor in the agency's determination, therefore, it was irrelevant. Plaintiff makes no argument in brief as to the relevancy of this line of questioning. We see none and agree with the referee's observation and ruling. He was within his discretion to disallow the question.
Although the referee initially told Lisenski that cross-examination had to be restricted to matters to which the employer's representative had already testified, he later retracted this restriction by telling Lisenski to ask any question. The referee retained the right to rule on the propriety of the questions as they arose. As indicated above, the transcript reveals that the only question disallowed by the referee was the question relative to the employer's intention as to the payment of unemployment compensation. This, as we have said, was properly within his discretion. Plaintiff and her representative otherwise had a full opportunity to cross-examine the witness. We, therefore, find no merit in this assignment of error.

SPECIFICATION OF ERROR NO. 4
Plaintiff claims she was deprived of her rights to a full and fair hearing as well as due process when the appeals referee refused to allow her to read a prepared statement into the record and by pretermitting the testimony of her witness, Jack Conway.
The transcript reveals that the prepared statement which plaintiff wished to read into the record was already in the record as evidence. The referee felt the reading would be redundant and a waste of time. We agree. Due process and fairness do not require triers of fact to allow repetitive testimony. Not allowing plaintiff to read the statement into the record in no way compromised the fact-finding process or plaintiff's due process rights.
In determining whether to take the testimony of Jack Conway, the following conversation took place:
REFEREE: Okay. You say you have a do you have a witness?
CLAIMANT: Yes, sir.
REFEREE: What is the nature of his testimony?
LISENSKI: To substantiate basically what Claudette has said. Jack Conway andJack Conway was the maintenance engineer and him and Ms. O'Neal shared the same office. Their desk were side by side. And Mr. Conway was aware of all the (inaudible-two people speaking).
REFEREE: Okay. In other words, he would only corroborate what she testified on.
LISENSKI: That is correct.
REFEREE: Okay. Now, we can dispense with his testimony if Ms. Fulton will stipulate that it presented Mr. what's his name?
LISENSKI: Conway.
REFEREE: Mr. Conway will testify in the same was as (inaudible-indistinct). Will you stipulate?
FULTON: Yes, I will.
REFEREE: Then we don't need to present it.
LISENSKI: Okay. So, sheRobbieMs. Fulton is basically accepting the testimony. Is that what we're saying?
REFEREE: What it means that
FULTON: I understand that
REFEREE: Mr. Conway is presented, he will testify in the same manner as Ms. O'Neal testified on the same points. Because he will be corroborating. Okay. (inaudible-indistinct) certain proceedings. Because we will be going over the same matters....
It is clear that the referee took great pains to explain the nature of the stipulation to both parties. By the admission of plaintiff's representative, Mr. Conway's testimony would have simply corroborated plaintiff's testimony. The stipulation merely simplified and streamlined the hearing. *704 Neither stipulation compromised plaintiff's right to a fair hearing, therefore, we find no merit in this assignment of error.

SPECIFICATION OF ERROR NO. 6
Mrs. O'Neal contends that in her brief she mistakenly stated that she had been paid for the week following her notice of termination. Appellant reasons that this failure to pay severance pay lends credence to her claim that she was, in fact, fired. This claim was not made before the appeals tribunal because at the time she believed that she had been fully paid for the week.
Plaintiff's salary was $18,000 per year. In her final check, she was paid for the time she actually worked through the day of her resignation. Her gross pay for one week's work should have been approximately $346.15. On her final check stub, in addition to the money paid for her actual work, the amount of $234.38 was added next to an abbreviation "Vac.". Mrs. O'Neal claims this is actually payment for accrued vacation time, not one week's wages. As the district judge reviewing the case pointed out, this discrepancy is more appropriately addressed in an action for wages rather than in this context.
The question still remains whether the case should be remanded to the referee to determine, taking this pay discrepancy into consideration, whether Mrs. O'Neal was actually fired. Considering all the facts in the record, we see no reason to remand this case. The record clearly demonstrates that Mrs. O'Neal resigned. Although it may be that she was not fully compensated as promised, this issue is not properly before us on appeal.

SPECIFICATIONS OF ERROR NOS. 2, 5 & 7
In these specifications of error, appellant contends that the evidence does not support the conclusion of the appeals referee.
We note that the scope of our appellate review of cases arising under the Louisiana Employment Security Law has been expressly and severely limited by the legislature. La. Const. of 1974, art. V, § 10(B); Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir. 1983). LSA-R.S. 23:1634 provides for judicial review of the decisions of the Board of Review as follows:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. (Emphasis supplied)
In short, our jurisdiction is limited to questions of law; we simply do not have the jurisdiction or authority to disturb the findings of fact of the Board of Review where questions of weight and credibility are involved and where their conclusions are supported by sufficient evidence. Southeastern Louisiana University v. Shelton, supra; Vancouver Plywood Co., Inc. v. Sumrall, 415 So.2d 625 (La.App.3rd Cir. 1982); Dunigan v. Administration of Dept. of Employment Security, 351 So.2d 807 (La.App. 1st Cir.1977).
Thus, judicial review of the findings of the Board of Review is strictly limited to first, a determination of whether the facts are supported by competent evidence, and second, whether the facts, as a matter of law, justify the action taken. Southeastern Louisiana University v. Shelton, supra; Black v. Sumrall, 413 So.2d 252 (La. App.4th Cir.1982).
We have previously held that Mrs. O'Neal's employer submitted competent evidence of plaintiff's voluntary resignation, which she failed to rebut. Plaintiff's burden was then to rebut this evidence by showing her resignation was not voluntary, that she was coerced or harassed into this resignation. She testified that unreasonable demands were placed on her by her employer and that if she did not complete the task of providing 300 perfect rooms in a three day period, all responsible inspectors *705 working under her would be fired. Mrs. O'Neal turned in her resignation two days after the deadline. Her testimony indicates that another employee left the employment of the Prince Murat, but it is not clear whether it was before or after plaintiff resigned, whether it was voluntary or not, or if it was in any way connected with the employer's threat. This is obviously not enough evidence to rebut the employer's prima facie evidence.
Mrs. O'Neal claims that the totality of the circumstancesthe unreasonable demand linked with the presence of Mrs. Screws at the hotel for two weeks and the rumors of her return to her former positionclearly prove coersion and harassment, and a finding to the contrary is manifestly erroneous. The district judge, in reviewing this case, summarized the facts of this case succinctly in oral reasons for judgment as follows:
The Court feels that had she continued her employment and was fired because of inability to perform the tasks asked her, then the question would have been whether or not the firing was proper, i.e. whether or not the task was unreasonable. But we didn't get that far in this case because of the fact that she gave her notice when she would leave the employment one week after May 25, 1983. The Court doesn't believe the presence of a former employee and or person who was interested in her job constituted such harassment that an ordinary prudent person would resign. It appears to me that Ms. O'Neal made her decision to resign because of the presence of the former employee and scuttlebutt. However, I don't think that the employer, the Prince Murat, Inc., could be bound, penalized to pay unemployment compensation because of gossip.
The evidence in the record supports these findings. For these reasons, the decision of the Board of Review is affirmed. All costs to be paid by plaintiff-appellant.
AFFIRMED.
NOTES
[1] We will deal initially with Specification of Errors Nos. 1, 3, 4 and 6. Issues Nos. 2, 5 and 7, which deal with findings of fact and sufficiency of evidence, will be discussed together.