527 So.2d 1113 (1988)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
The LOUISIANA DEPARTMENT OF LABOR, OFFICE OF EMPLOYMENT SECURITY and Sandra T. Masters.
CA 87-0657.
Court of Appeal of Louisiana, First Circuit.
June 21, 1988.
Murphy J. Foster, Baton Rouge, for plaintiff-appellee South Cent. Bell Telephone Co.
Robert H. Urann, Metairie, for defendant-appellant Sandra T. Masters.
*1114 Denise A. Nagel, Baton Rouge, for defendant-appellee Office of Employment Sec.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is an appeal from a district court judgment which reversed an administrative determination by the Office of Employment Security of the Department of Labor (OES) that an employee was entitled to unemployment compensation benefits because she was induced by her employer to voluntarily resign her position.

FACTS
Sandra T. Masters had been an employee of South Central Bell (Bell) since March 23, 1970. Masters resigned her employment effective June 1, 1984. She filed a claim for unemployment compensation benefits on June 3, 1984. Bell resisted this claim. OES ruled that Masters resigned for good cause and was entitled to benefits.
Bell took an appeal to the Appeal Tribunal of OES. The appeal referee affirmed the OES ruling with the following factual and legal findings:
The claimant worked for the above named employer for fourteen years. At the time of the separation on June 1, 1984, she was an Administrative Report Clerk. She was scheduled to work from 8:00 a.m. to 4:30 p.m., Monday through Friday. For her services, she received $1496.00 a month.
Due to a reorganization within the claimant's distribution department, she was going to have to "bump" another Administrative Report Clerk with less seniority than her. On May 10, 1984, a meeting was held with Ms. Elde present along with union representatives. Senior employees were going to be allowed to voluntarily leave and receive VIP pay. The VIP pay was not enough money for the claimant, and the employer was requested to check on something else. The company agreed to issue termination pay only if the employee requested such. The claimant could have continued working in the same classification title at the same rate of pay, but chose not to as she did not want to "bump" her co-worker with less seniority, as she had understood that the co-worker would have to pass a test that included typing and she could not type. She chose to leave and accept the termination pay.
. . . .
[La.R.S. 23:1601(1) is quoted in full.]
The Louisiana Board of Review has set a precedent in deciding cases such as this. The 14th Judicial District Court, in the case of City Service Oil Company vs. Multiple Claimants and Administrator, ruled that an induced separation by the employer was under nondisqualifying conditions. It is so held in this case.
IT IS ORDERED That the determination of the Agency, assessing no disqualification, be affirmed.
Bell appealed to the OES Board of Review. The Board of Review affirmed the ruling of the appeal referee, without assigning reasons.
This suit was filed in district court on October 12, 1984. The district court judge reversed the ruling of the Board of Review, without assigning reasons. Masters took this devolutive appeal.

GOOD CAUSE FOR RESIGNATION

Assignment of Error Number 1
Masters contends that she resigned for good cause because her resignation was induced by Bell.
Bell contends that Masters' decision to resign was completely voluntary and does not constitute good cause.
In Louisiana Department of Corrections v. Administrator, Louisiana Office of Employment Security, 457 So.2d 825, 827 (La.App. 1st Cir.1984), this court stated the following:
Good cause connected with a person's employment, as defined in La.R.S. 23:1601, means cause connected with working conditions, ability of the employee to continue the employment, availability of transportation to and from work *1115 and other factors which affect the employee's ability or right to continue work or which affect the benefits he may receive from his employer either upon continuation of work or retirement.... It is good cause connected with employment for an employee to quit his job when the work becomes unsuitable due to unanticipated working conditions.... Personal reasons for resigning employment are not good cause connected with employment.... A change in an employee's shift work may constitute good cause to resign his employment.... The findings of fact of the Board of Review are conclusive, if supported by sufficient evidence and in the absence of fraud, and the jurisdiction of this court is confined to questions of law. La.R.S. 23:1634.
The referee's findings of fact herein are supported by sufficient evidence and are conclusive.
The res nova issue before this court is whether "good cause" includes a situation where an employer intends to discharge, or lay off, employees due to a shortage of work, and an employee resigns in lieu of the employer "bumping" a co-worker with less seniority.
In Algiers Homestead Association v. Brown, 246 La. 738, 167 So.2d 349, 350-351 (1964), appears the following:
The broad purpose of the unemployment compensation acts which have been adopted by various states is to provide a measure of economic security to those who are unemployed because industry does not provide enough jobs to employ all those available for, and seeking, employment. To accomplish this purpose the states have enacted varied disqualification provisions which will in their opinion insure that unemployment compensation payments will be received only by workers who are unemployed primarily as a result of economic causes. Stated another way, their purpose is to make sure that compensation is not paid to those who choose not to work, that the compensation law does not encourage idleness, and that it does not weaken the willingness of the individual to provide for himself through employment.
In Hale v. Gerace, 324 So.2d 558, 560 (La. App. 1st Cir.1975), writ denied, 326 So.2d 344 (La.1976), this court stated as follows:
As we review the matter, the broad purpose of the unemployment law (Louisiana Employment Security Law) is to provide a measure of economic security to workers who are unemployed merely because there are not enough jobs to go around; LSA-R.S. 23:1471; ... In the National Gypsum Co. case, supra, the court, after setting forth this state's declared public policy as a guide for interpreting the unemployment compensation law, said:
"Thus unemployment compensation is not paid primarily to reward the employee nor to punish the employer, but rather to protect the stability of the state and of the family, by relieving the family distress and the menace to the public welfare occasioned through unemployment of individual workers."
To accomplish this avowed purpose, this state has included in its law various disqualification grounds; LSA-R.S. 23:1601. These disqualification grounds are intended to insure that unemployment compensation benefits will be received only by workers who are unemployed primarily because of economic causes.
In Parker v. Gerace, 354 So.2d 1022, 1025 (La.1978), our supreme court stated that "[t]he Louisiana Employment Security law is remedial social legislation. It is to be construed liberally and in the interest of the statute's beneficiaries."
Although we have found no Louisiana jurisprudence addressing this particular issue, we do find a helpful analogous case in Morillo v. Director of Division of Employment Security, 394 Mass. 765, 477 N.E.2d 412 (1985). In Morillo, 477 N.E.2d at 412-413, appears the following:
We are asked to decide a question of first impression: whether an employee who agrees to be one of those laid off after the employer has announced his decision to lay off a specified number of *1116 employees is disqualified from benefits under G.L. c. 151A, § 25(e)? We answer this question in the negative, and we reverse.
The material facts are not in dispute. We confront a question of law.... The claimant, Horacio Morillo, worked for the employer, G.S.F. Corp., as a machine operator from March 1, 1983, until December 7, 1983, when he was laid off. He learned that the employer was going to lay off twelve employees. Although the claimant could have continued work, he volunteered to be one of the twelve because he was dissatisfied with the safety of the machines.
After his claim for unemployment benefits was denied, he requested a hearing and a review examiner of the Division of Employment Security upheld the denial, ruling that the claimant left his work "voluntarily without good cause attributable to the employing unit or its agent."... The claimant appealed this decision to the board of review, which denied his application for review, thereby adopting the earlier decision. A petition for review filed in the District Court resulted in an affirmance of the decision and the claimant then appealed to this court.
. . . .
We are required by explicit mandate to construe the unemployment security law "liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." ... We think that, absent fraud and collusion, this purpose of the law is promoted by permitting employees such as the claimant to offer to be among those employees laid off. The employer is not penalized because his account will be charged regardless of the identity of employees who are laid off. This result is both equitable and realistic.
Our conclusion does no disservice to the term "voluntarily" in G.L. c. 151A, § 25(e)(1), because the first and last step in the termination process in this case were taken by the employer. The employer decided to lay off twelve people. The claimant's conduct in volunteering did not terminate his employment because the employer was not compelled to accept the claimant's offer. The last act in the process was also that of the employer, the act of laying off the claimant.
The reasoning of Morillo is sound. Had Bell simply terminated the employees with less seniority than Masters, they would have been eligible for benefits (assuming no other disqualifications) because their unemployment would have resulted from economic causes. Bell made the initial decision to lay off a certain number of employees due to work shortage or reorganization. Bell merely allowed Masters to choose to be one of those employees laid off. Such an interpretation does not "encourage idleness" or otherwise "weaken the willingness of the individual to provide for himself through employment" since Masters must still comply with La.R.S. 23:1600 by actively searching for work to be eligible for benefits.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgment of the district court is reversed, and the administrative decision of the OES Board of Review is reinstated. Bell is cast for the cost of this appeal.
REVERSED AND RENDERED.