540 So.2d 491 (1989)
Stephen LEWIS
v.
ADMINISTRATOR, et al. and Garrett Honda.
No. CA 88 0490.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Stephen Lewis, Covington, in pro. per.
B.J. Francis, Baton Rouge, for defendant-appellant Office of Employment Sec. Admin.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This is an appeal from a district court judgment which reversed an administrative determination by the Board of Review of the Office of Employment Security of the Department of Labor (OES) that an employee was entitled to unemployment compensation benefits when he voluntarily resigned his position because changes were made to his salary agreement which resulted in decreased wages.

*492 FACTS
During the period of March 1980 to March of 1986, Stephen K. Lewis was employed by Covington Cycles, Inc. d/b/a Honda of Covington (Covington). On March 22, 1986, Covington sold its assets[1] to R.E. Garrett Sales & Service, Inc. d/b/a Garrett Honda/Yamaha (Garrett). Lewis continued his employment with Garrett until he voluntarily resigned his position effective November 22, 1986.
On November 24, 1986, Lewis filed a claim for unemployment compensation benefits with OES, contending he left his employment for good cause because his salary had been reduced by approximately $80 per week and certain fringe benefits had been taken away. La.R.S. 23:1622-1625. Garrett resisted this claim. On December 15, 1986, OES ruled that Lewis was entitled to benefits because his salary was reduced and this was good cause to resign.
On December 19, 1986, Garrett took an appeal to the Appeal Tribunal of OES. La. R.S. 23:1628 and 1629. The appeal referee held an evidentiary hearing on January 22, 1987. On January 27, 1987, the appeal referee reversed OES and disqualified Lewis from receiving benefits because he left his employment without good cause. The appeal referee made the following factual and legal findings:
The claimant worked for the above named employer for approximately eight months until November 22, 1986. He was employed full-time as a mechanic, on a commission basis. The claimant received fifty percent of the price of the repair tickets when working on customer vehicles. When doing other work in the shop, he received a flat rate of $5.50 per hour.
Prior to March 22, 1986, the claimant worked for the previous owners, Honda of Covington, as a sales adviser. He was earning $5.75 per hour plus commission. The employer was unaware of the claimant working as a service adviser, and believed he was employed as a mechanic during his employment with Honda of Covington.
During his employment with the above named employer, the claimant's salary fluctuated as a result of business. The claimant feels his salary was reduced because the other mechanic in the shop was receiving most of the commission work while the claimant was doing shop work, at $5.50 per hour. The employer's representative testified that the commission work was given out fairly by the service manager. After notifying the employer, the claimant left this employment due to a reduction in gross wages.
. . . .
When an individual becomes unemployed and the separation issue is "leaving", then the burden of proving "good cause" as required by the above cited Section of Law is placed upon the claimant. It is well established that the claimant has this responsibility and must do so with a preponderance (reasonable) of evidence. (Chrysler v. Doyle [Doyal], 352 So.2d 322 (4th Cir., 1979).... In this instant case, the claimant did attempt to give reasons, if proven, may qualify him for Unemployment Insurance benefits. However, these reasons given by the claimant were not proven. This being so, then it must be concluded that the claimant's leaving was entirely personal and not a reason which, in turn, would qualify him for the receipt of Unemployment Insurance benefits. The claimant is not entitled to Unemployment Insurance benefits.
On January 30, 1987, Lewis appealed this ruling to the OES Board of Review. La.R. S. 23:1630-1633. On March 6, 1987, the Board of Review reversed the appeal referee and reinstated benefits for Lewis. The Board of Review made the following factual and legal findings:
The claimant worked for the named employer for approximately eight months until November 22, 1986. Prior to March 22, 1986, the claimant worked for the previous owners, Honda of Covington. He was a sales adviser, and was paid $5.75 per hour, plus commission.

*493 When the business changed hands in March, the claimant's position title was changed to mechanic, and his salary agreement changed to a commission of fifty percent of the price of the repair ticket when working on customer vehicles, or $5.50 per hour when doing other work in the shop. The claimant left the employment due to a reduction in gross wages.
. . . .
After carefully reviewing the testimony, evidence and records in this case, the Board finds that the separation from employment occurred when changes were made to the salary agreement resulting in decreased wages.
Due to the aforementioned, the Board concludes that the separation was for good cause connected with the employment. Benefits should be allowed.
On March 17, 1987, Garrett filed a petition for judicial review in the Twenty-Second Judicial District Court. La.R.S. 23:1634. In a judgment dated October 13, 1987, the district court reversed the decision of the Board of Review with the following rationale:
In the instant case the employer and the claimant were the only witnesses who testified at the administrative hearing. The Board of Review apparently totally ignored the employer's testimony that the claimant's reduction in wages resulted from his own lack of initiative and interest in applying himself to his job, without a finding that the employer's version of the facts was not credible. The Court finds the employer's version of the facts to be just as believable as the claimant's version and, therefore, finds that the claimant failed to prove his case by a preponderance of the evidence. Furthermore, even if the claimant's wages were changed, the Court does not find a substantial change in his wages.
Accordingly, the Court finds that the factual conclusions and opinion of the Board of Review are not supported by sufficient, competent evidence and that the pertinent law has been incorrectly applied to the facts.
OES took this devolutive appeal. La.R.S. 23:1634.

GOOD CAUSE FOR RESIGNATION

(OES Assignments of Error Numbers 1 and 2)
OES contends the trial court erred by reevaluating the credibility of the witnesses and reversing the ruling of the Board of Review when its appellate function is limited to questions of law according to La.R.S. 23:1634.
Lewis testified before the appeal referee that prior to working for Garrett he worked for Covington as a "service advisor" at a salary of $5.75 per hour plus commissions. Covington allowed paid vacations; Garrett did not. He was employed by Garrett as a "commission mechanic" at a salary of $5.50 per hour and, if he worked on a "customer" bike, he got $15 per hour. Garrett had two mechanics and a service manager. The service manager determined who got the commission work on the "customer" bikes, and the service manager gave most of the commission work to the other mechanic. His weekly salary dwindled while he worked for Garrett. When he left Garrett, he advised he was leaving because of his reduction in pay.
Stephen W. Garrett, Garrett's vice president, testified on behalf of Garrett before the appeal referee. After Garrett bought the assets of Covington, all employees that wished to stay on with Garrett were advised of what their pay and benefits would be with Garrett. Lewis continued his employment with Garrett with that knowledge. Covington's records indicated Lewis was a mechanic; Garrett was not aware Lewis was a "service advisor." Garrett filed into evidence, as exhibit A, Lewis' application for employment with Garrett; this document is dated March 21, 1986, and lists Lewis' last salary with Covington as $5.50 per hour plus commissions and lists his position title as "technician-service advisor." When Lewis commenced working for Garrett, he did not change his shop location (work area). Garrett paid Lewis $5.50 per hour plus $15 per hour for customer work. Garrett would pay up to 45 *494 hours per week (90 hours for a two-week pay period). Garrett worked five days a week (Tuesday through Saturday). Lewis took time off of work to work on a home he was building and to go to races. When Lewis resigned, he verbally told Stephen Garrett he had no future plans and intended to draw unemployment benefits. Garrett filed into evidence as exhibit D a statement[2] from its service manager, Terry Armstrong, which reads as follows:
Steve Lewis worked in our service department as a motorcycle mechanic on a commission bases [sic]. When we had plenty of service work Steve had a very good opportunity to make plenty of money. Most motorcycle mechanics know that the motorcycle business is very seasonal. In the summer months there is plenty of work and in the winter months the work slows up. I was always able to keep the mechanis [sic] busy with work and shop chores.
Steve lewis [sic] never was a very production worker. He would take long lunch breaks and long cigarette breaks. He would spend much time talking on the phone and talking to his wife who would come to the shop often and interupt [sic] his work. This would obviously effect his work performance and thus his pay since being on a commission scale.
Garrett also filed into evidence as exhibit E a recapitulation of Garrett's two-week pay periods from March 29, 1986, to November 22, 1986, which showed the following:

EMPLOYEE LEWIS STEPHEN S/R 5.5 H 50/50 CO HOURS AVAIL 90
DATE GROSS SHOP HR COMMISSIO(N) NO. DAYS NO. HOURS
 1986
MARCH 29 330.54 51.1 43.7 6 51.1
APRIL 12 672.77 80.7 226.44 10 80.7
APRIL 26 393.25 71.5 61 9 71.5
MAY 10 509.1 61 173.6 9 77.9
MAY 24 580.75 69.7 188.6 10 83.2
JUNE 7 672.55 60.5 332.37 10 82.7
JUNE 21 797.28 38.7 577.55 10 82.5
JULY 5 605.3 4.8 578.9 8 74.4
JULY 19 541.3 10 486.3 10 82.6
AUG 2 509.86 0.6 506.56 8 65.4
AUG 16 612.9 612.9 10 80
AUG 30 573.75 19.2 554.5 10 80
SEPT 13 520.65 8.9 471.7 10 82.3
SEPT 27 408.4 1 402.9 8 66.6
OCT 16 533.5 10 478.5 10 73.2
OCT 25 443.75 20.5 331 9 71.6
NOV 8 253.7 0.4 251.5 6 53
NOV 22 418.5 8.7 370.65 10 79.3

In rebuttal, Lewis disputed the accuracy of Garrett's exhibits D and E. He testified he only missed four days of work to go to races and never took off early from work to work on his house. Lewis asserted his pay checks were small because of Armstrong's incompetence as a service manager. Armstrong did not properly prescreen work tickets and left the mechanics waiting for parts. Lewis testified he averaged $360 per week working for Covington but only received $270 per week working for Garrett. (Garrett's exhibit E shows Lewis averaged $266 per week.)
Before the appeal referee (and the Board of Review), a person seeking unemployment compensation benefits bears the burden of proving his claim by a preponderance of the evidence. Chrysler Corporation v. Doyal, 352 So.2d 322 (La.App. 4th Cir.1977). He must commence the presentation of evidence and establish at least a prima facie[3] showing that he is entitled to *495 benefits. Doyal, 352 So.2d at 324-325. If the claimant establishes that he was discharged by his employer, the burden of proof shifts to the employer to show that the employee was discharged for misconduct which would disqualify him from receiving benefits. Banks v. Administrator of Department of Employment Security of State of Louisiana, 393 So.2d 696 (La. 1981). However, if the employee shows he voluntarily left his employment, he still has the burden of proving that he left his employment for good cause. Clemons v. Blache, 501 So.2d 1020 (La.App. 2nd Cir. 1987).
In Louisiana Department of Corrections v. Administrator, Louisiana Office of Employment Security, 457 So.2d 825, 827 (La.App. 1st Cir.1984), appears the following:
Good cause connected with a person's employment, as defined in La.R.S. 23:1601, means cause connected with working conditions, ability of the employee to continue the employment, availability of transportation to and from work and other factors which affect the employee's ability or right to continue work or which affect the benefits he may receive from his employer either upon continuation of work or retirement.... It is good cause connected with employment for an employee to quit his job when the work becomes unsuitable due to unanticipated working conditions.... Personal reasons for resigning employment are not good cause connected with employment. [Citations omitted.]
See also South Central Bell Telephone Company v. Louisiana Department of Labor, Office of Employment Security, 527 So.2d 1113 (La.App. 1st Cir.), writ denied, 532 So.2d 153 (La.1988). Further, in Nason v. Louisiana Department of Employment Security, 475 So.2d 85, 87 (La. App. 2nd Cir.), writ denied, 478 So.2d 149 (La.1985), appears the following:
Mere dissatisfaction with working conditions does not constitute "good cause" unless the dissatisfaction is based on discriminatory, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began.... Resignation by an employee merely because he is dissatisfied with his compensation does not constitute good cause for leaving his employment.... However, a resignation as a result of a substantial decrease in earnings does constitute "good cause" for leaving the employment.
See also Hayes v. State, Office of Employment Security, 467 So.2d 175 (La.App. 3rd Cir.1985).
The essence of Lewis' claim for benefits is that Garrett's service manager did not give him his fair share of commission work, his pay checks dwindled from $360 per week with Covington to $270 per week with Garrett, and he left Garrett due to this substantial decrease in salary. The essence of Garrett's defense is that Lewis had the opportunity to make substantially higher weekly pay checks, but he was not a productive worker; he took a great deal of time off from work; there was a seasonal slowdown in business; and, accordingly, he made less money. Apparently, the appeal referee accepted the evidence submitted by Garrett and discredited the testimony of Lewis and found Lewis failed to prove his entitlement. The Board of Review reviewed[4] the record of the proceedings before the appeal referee and accepted the testimony of Lewis and rejected that of Garrett and reversed the ruling of the referee. The question then presented is what standard do we apply to review the ruling of the Board of Review?
In O'Neal v. Blanche, 482 So.2d 700, 704 (La.App. 1st Cir.1985), appears the following:
We note that the scope of our appellate review of cases arising under the Louisiana *496 Employment Security Law has been expressly and severely limited by the legislature. La. Const. of 1974, art. V, § 10(B); Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir.1983). LSA-R.S. 23:1634 provides for judicial review of the decisions of the Board of Review as follows:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. (Emphasis supplied)
In short, our jurisdiction is limited to questions of law; we simply do not have the jurisdiction or authority to disturb the findings of fact of the Board of Review where questions of weight and credibility are involved and where their conclusions are supported by sufficient evidence....
Thus, judicial review of the findings of the Board of Review is strictly limited to first, a determination of whether the facts are supported by competent evidence, and second, whether the facts, as a matter of law, justify the action taken.
Judicial review of the findings of the Board of Review does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence or substituting the views of the court for that of the Board of Review as to the correctness of the facts presented.[5]Dupont v. Blanche, 514 So.2d 286 (La.App. 5th Cir.1987); Harris v. Administrator, Louisiana Office of Employment Security, 480 So.2d 886 (La.App. 2nd Cir.1985), writ denied, 481 So.2d 1338 (La. 1986). An employee's sworn testimony alone may constitute sufficient evidence to meet the requirements of La.R.S. 23:1634. Arceneaux v. Administrator, Office of Employment Security, Department of Labor, 511 So.2d 40 (La.App. 3rd Cir.1987).
The trial court held "the employer's version of the facts to be just as believable as the claimant's version and, therefore, finds that the claimant failed to prove his case by a preponderance of the evidence." In so ruling, the trial court made a credibility determination (employer's version versus the employee's version) and a weight determination (employee's version does not constitute enough weight to be a preponderance). The trial court did not have jurisdiction to make these rulings and erred as a matter of law.
Because the trial court erred as a matter of law in reaching its judgment, we must make a de novo determination of whether or not the ruling of the Board of Review is correct. The Board of Review accepted the credibility of the employee and gave weight to his version of the facts. We have no appellate jurisdiction to disturb these factual findings. The employee's version of the facts is that Garrett's service manager did not give him a fair share of the commission work, his pay checks dwindled from $360 per week to $270 per week, and he left his employment due to this substantial reduction in salary. These facts show unfair treatment in work assignments and a substantial decrease in earnings. This testimony is sufficient to establish good cause to resign. The ruling of the Board of Review is supported by sufficient evidence[6] and is correct as a matter of law.
These assignments of error have merit.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and the ruling of the Board of Review is reinstated. Garrett is cast for all costs of these proceedings. *497 La.C.C.P. art. 2164; La.R.S. 13:5112(D); La.R.S. 23:1548 and 1692.
REVERSED AND RENDERED.
NOTES
[1] Garrett did not buy the stock of the Covington Cycles, Inc. corporation.
[2] Although this statement is hearsay, it was admitted into evidence without objection. See Chalik v. Gerace, 459 So.2d 82 (La.App. 2nd Cir.1984) and the cases cited therein.
[3] Prima facie evidence is evidence sufficient to establish a given fact which, if not rebutted or contradicted, will remain sufficient. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986) and the cases cited therein.
[4] We have found no law or jurisprudence which defines the standard by which the Board of Review must review the factual rulings of the appeal referee.
[5] In this factual and legal posture, the sufficiency of the evidence has been held to be a question of law. Charbonnet v. Gerace, 457 So.2d 676 (La.1984). Compare, however, State v. Tennant, 352 So.2d 629 (La.1977) and State in the Interest of Cox, 461 So.2d 658 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1375 (La.1985). Thus, it would appear that in employment security cases our jurisdiction to review the facts of the case is similar, if not identical, to criminal cases in which we are required to view the evidence in the light most favorable to the prevailing party (the State). La.C.Cr.P. art. 821.
[6] No fraud has been alleged in these proceedings.