564 So.2d 756 (1990)
Robert THOMSON, Appellant,
v.
STATE of Louisiana, Does and Springhill Wood Products, Appellees.
No. 21,608-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
*757 Northwest La. Legal Services, Inc. by Ana S. Kazan, Shreveport, for appellant.
Office of Employment Security by Sandra A. Broussard, Frank T. Scott, Jr., Baton Rouge, for appellees.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
In this unemployment compensation case, Robert Thomson appeals from the judgment of the district court affirming the denial of his claim for benefits. He contends the district court erred in failing to find that he resigned for good cause connected with his employment and in not considering his religious duty to take care of his parents under LSA-C.C. art. 229 and the Free Exercise Clause of the First Amendment of the U.S. Constitution. For the reasons which follow, we affirm.
The Administrative Law Judge's (ALJ) findings are as follows. Thomson was hired by Springhill Wood Products on February 19, 1985 and he worked as a utility employee in the dry veneer department, earning $6.63 per hour plus a shift differential. He worked an eight hour shift on a seven day rotation basis. He last worked July 29, 1988. He requested and received his one-week vacation, ending August 7, and, thereafter, a 30 day leave of absence, to end September 8. He requested the leave in order to visit his parents in Branson, Missouri. According to Thomson, he needed to take care of his elderly father, *758 who suffered from high blood pressure and to give his mother "moral support." Thomson testified that he spent the first weeks of his leave taking care of his parents' yard and garden, fixing things around the house, and providing moral support for his parents. On August 22, 1988, Thomson returned to Springhill and personally asked his supervisor for an indefinite extension of his leave. Mr. Frank, the supervisor of personnel and safety, testified he told Thomson that the company could not grant an indefinite leave of absence. According to Frank, Thomson then indicated that after his leave expired, he would not be returning to work. Frank suggested that Thomson could expedite the withdrawal of his retirement thrift funds if he would resign immediately. Thomson accepted and resigned by signing a voluntary resignation form.
Thomson filed a claim for unemployment compensation with the Webster Parish Agency. The claims adjudicator, citing only Thomson's written statement, found he had been discharged and qualified the claim. The employer appealed to the ALJ, who conducted a hearing, found the facts as outlined above and reversed the agency's decision. Thomson appealed to the Board of Review, which affirmed the disqualification. Pursuant to LSA-R.S. 23:1634, Thomson then sought judicial review of the Board's decision in the district court, where the judgment of the Board was affirmed.

ASSIGNMENT OF ERROR # 1
By this assignment, Thomson argues that the district court erred in failing to find that he resigned for good cause connected with his employment. According to Thomson, his resignation was induced by his employer and he had already been replaced by another employee before his resignation.
The claimant bears the burden of proving his claim by a preponderance of the evidence. Chrysler Corp. v. Doyal, 352 So.2d 322 (La.App. 4th Cir.1977). The findings of fact of the Board of Review are conclusive, if supported by sufficient evidence and not tainted by fraud, and judicial review is limited to questions of law. LSA-R.S. 23:1634; Sledge v. Whitfield, 531 So.2d 291 (La.App. 2d Cir.1988).
In his brief, Thomson mistakenly quotes R.S. 23:1601(1) as it read prior to a recent amendment. Formerly a claimant was disqualified from receiving unemployment benefits if he left his employment without good cause connected with his employment. The amended R.S. 23:1601(1), effective July 3, 1988 and applicable to this case, disqualifies a claimant if he leaves employment without good cause "attributable to the employer." Even before the amendment, courts viewed personal reasons for resigning as not good cause "connected with his employment." See South Cent. Bell Tel. v. Dept. of Labor, 527 So.2d 1113 (La.App. 1st Cir.1988), writ denied 532 So.2d 153 (La.1988); Louisiana Dept. of Corr. v. Administrator, La. Office of Emp. Sec., 457 So.2d 825 (La.App. 1st Cir. 1984). The purpose of the amendment must have been, at the very least, to embody the jurisprudence and remove domestic obligations as good cause. Thomson's personal reasons for resigning employment are not good cause "attributable to the employer." Here, the ALJ found, and district court affirmed, that the employer did nothing to influence Thomson's decision to resign. Thomson resigned for personal reasons which disqualified him from drawing benefits. We cannot say that this decision is clearly wrong.
Thomson cites South Central Bell Telephone in support of his argument that a resignation induced by the employer is a resignation for "good cause connected with his employment." In South Central Bell Telephone, the employer made an initial decision to lay off a certain number of employees due to a work shortage and the plaintiff chose to quit rather than bump another employee who would have been laid off had she not quit. The First Circuit held that, under those circumstances, the plaintiff left for good cause connected with her employment and was entitled to benefits.
In the present case, however, Thomson was not induced by his employer to resign. *759 When his request for an indefinite leave of absence was denied, he informed his employer that upon expiration of his leave, he was terminating his employment. The supervisor explained to him that if he resigned immediately his retirement proceeds would be distributed much sooner. Thomson accepted this option and resigned immediately. The ALJ found that Thomson voluntarily resigned and was not induced to do so by his employer. This factual finding is supported by sufficient evidence and is not manifestly erroneous.
Thomson further urges that the employer had already replaced him before he resigned. Citing King v. Louisiana Dept. of Emp. Sec., 229 So.2d 387 (La.App. 3d Cir. 1969), he argues this circumstance amounts to good cause. Although Springhill was using a replacement during Thomson's leave, the supervisor specifically said the position was being held open. R.p. 27. Thomson, in fact, admitted this at trial. When asked by the ALJ at the hearing, "When Mr. Frank was talking to you on the 22nd, did he indicate that you would not have a job if you returned on September 8th?," Thomson replied, "... not that I can, I can remember ..." R.p. 39.
King supra, is plainly distinguishable in that it was based on a special provision, § 1601(6)(b), that was repealed in 1977, and the claimant in King indicated that she intended to return to work after her leave of absence.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR # 2
By this assignment of error, Thomson claims that the district court erred in not considering his religious and statutory duty to take care of his ill father and provide moral support for his mother. According to Thomson, his religious duty to "honor thy mother and father" under the Fourth Commandment of the Bible and his statutory duty under C.C. art. 229 to provide for his parents in need overrides any conflicting statutory provision in the Louisiana Employment Security Law. Thomson also contends that the state cannot violate his constitutional rights under the First Amendment's Free Exercise Clause of the U.S. Constitution by impinging upon his religious conviction of honoring his mother and father.
The argument that § 1601(1), as applied to this case, unconstitutionally penalizes him for freely exercising his religion, was never advanced to any tribunal below. It is raised here on appeal for the first time. It is well settled that the constitutionality of a statute must first be raised in the trial court, not the appellate court. Johnson v. Welsh, 334 So.2d 395 (La.1976); Becker v. Allstate Ins. Co., 307 So.2d 101 (La.1975); Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (La.1971); Gathright v. Smith, 352 So.2d 282 (La.App. 2d Cir.1977). We will therefore not consider the argument, except to note the utter absence of religious animus in the record. Cf. Gleason v. Blache, 487 So.2d 561 (La.App. 4th Cir.1986).
C.C. art. 229 provides:
Children are bound to maintain their father and mother and other ascendants, who are in need, and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal. This reciprocal obligation is limited to life's basic necessities of food, clothing, shelter, and health care, and arises only upon proof of inability to obtain these necessities by other means or from other sources.
Thomson's duty to maintain his parents with the necessities of food, clothing, shelter, and health care, does not conflict with R.S. 23:1601(1). The Louisiana Employment Security Law is not intended to address the parental relations of employees; the Legislature did not make it subject to the codal responsibility of art. 229. Thomson's obligation to his parents, although perhaps a personal "good cause," is not a cause "attributable to the employer" within the meaning of R.S. 23:1601(1). This assignment lacks merit. We would note that the particular services Thomson testified he rendered to his parents are different from the "necessities" envisioned by art. 229. We would also note that Thomson's *760 codal obligation may have been better fulfilled by returning to work on September 8th and, with a steady income, providing his parents with necessary support through financial means.
For the foregoing reasons, the judgment of the district court is affirmed. Costs are not assessed. LSA-R.S. 23:1692.
AFFIRMED.