691 So.2d 194 (1997)
Ellie W. KING, Sr.
v.
TANGIPAHOA PARISH POLICE JURY, Board of Review, Louisiana Employment Security, Department of Labor.
No. 96 CA 0934.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*195 A. Wayne Stewart, Albany, for Plaintiff-Appellee Ellie W. King, Sr.
Joanna B. Wilson and Darlene S. Ransome, for Defendant-Appellant State of Louisiana.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
This is an appeal from a district court judgment which reversed a decision of the Louisiana Board of Review of the Office of Employment Security finding that an employee was not entitled to unemployment compensation benefits because he was separated from employment under disqualifying circumstances.

FACTS AND PROCEDURE
Following his termination from employment, Elllie King, Sr. filed a claim for unemployment benefits. On February 9, 1995, the Louisiana Office of Employment Security (LOES) determined that Mr. King was discharged from employment because of absenteeism and failure to give proper notice/medical excuse to his employer. The LOES determined that the discharge was for misconduct connected with the employment and benefits were denied.
Mr. King appealed this decision to the Appeal Tribunal of LOES. Two evidentiary hearings were held on March 29, 1995 and on April 19, 1995. On April 20,1995, the appeal referee determined that Mr. King submitted a falsified doctor's excuse to his employer, and for that reason, Mr. King's discharge was for misconduct connected with the employment. The referee affirmed the decision of the LOES assessing a disqualification from benefits. The referee made the following factual and legal findings:
The claimant worked for the named employer for approximately five years as a Compactor Operator, at the dump in Independence, Louisiana. His last day of work was January 9, 1995. At the time of separation, he was earning $7.50 per hour, and was scheduled to work from 7:00 A.M. to 5:30 P.M., Monday through Friday, and from 8:00 A.M. to 12:00 Noon on Saturday. He also worked additional hours as needed. He received time and one-half after forty hours.
The claimant was absent from work due to personal illness from December 23, 1994 through January 8, 1995. While he was off, he and his wife kept the employer informed of his condition. He returned to work on January 9, 1995, and gave the Superintendent, Aubry Smith, a doctor's statement which stated he was excused from work for "3-14 days." The claimant worked that day, however, the following day, he called in and said he could not *196 report for work because of car trouble. He reported to work Wednesday morning and at that time was terminated. The superintendent gave him some papers to sign that day which included a written warning dated September 15th, for being absent without calling in; another written warning for the same reason dated September 23rd; a written warning dated January 10,1995, for failing to report for work on December 23rd, and reporting back to work on January 9, 1995, with a doctor's excuse which he had changed from "3-4 days" to "3-14 days:" and finally a written warning dated January 11, 1995, indicating that the claimant failed to report to work and did not call in.
....
The evidence in this case indicates that the claimant was discharged from his job because of absenteeism and falsifying a doctor's excuse. The evidence shows that the claimant's last absence occurred on Tuesday, January 10, 1995. He was absent that day because of car trouble and called in and notified the employer that he would not be at work. The claimant, however, had returned to work on January 9, 1995, from a two week absence and had given the employe[r] a doctor's excuse which the employer later decided had been altered. During both hearings, the claimant admitted that he did alter the doctor's excuse. He stated he did it because he could not afford to go back to the doctor. This does not change the fact that the claimant submitted a falsified doctor's statement to his employer and for that reason, it is determined that the claimant's discharge was for misconduct connected with the employment. He was, therefore, separated from the employment under disqualifying circumstances. (Emphasis added.)
Mr. King appealed this decision to the LOES Board of Review. On June 12, 1995, the Board of Review adopted the findings of fact and conclusions of law of the referee and affirmed the decision in all respects. On June 21, 1995, Mr. King filed a petition for judicial review. The district court reversed the decision of the Board of Review stating that:
The ALJ found misconduct in that claimant altered a doctor's excuse. However, the ALJ found as a fact that after his illness and presentation of said excuse, claimant was accepted back on the job and worked the day of 1/9/95. Claimant's discharge must then have been for other reasons. The court therefore finds that the decision of the ALJ as affirmed by the Board of Review should be reversed.
The LOES appeals the decision of the district court.

JUDICIAL REVIEW
LOES argues that the trial court erred in re-determining a question of fact and reversing the ruling of the Board of Review when its appellate function is limited to questions of law under La. R.S. 23:1634. The specific question we address is whether the trial court erred in re-determining whether Mr. King was terminated for submitting a falsified doctor's excuse.
The scope of judicial review of cases arising under the Louisiana Employment Security Law is expressly and severely limited by the legislature. La. R.S. 23:1634(B) provides that upon judicial review, the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Courts may not disturb factual findings of the Board of Review when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. Lewis v. Administrator, 540 So.2d 491, 496 (La.App. 1st Cir.1989); O'Neal v. Blanche, 482 So.2d 700, 704 (La. App. 1st Cir.1985). Judicial review of the findings of the board of review does not permit weighing of evidence, drawing of inferences, re-evaluation of evidence, or substituting views of the court for that of the board as to the correctness of the facts presented. Lewis, 540 So.2d at 496. An employee's sworn testimony alone may constitute sufficient evidence to meet the requirements of La. R.S. 23:1634. Lewis, 540 So.2d at 496.
*197 The trial court found that because Mr. King was accepted back on the job after presentation of the altered excuse, his discharge must have been for other reasons. In so ruling, the trial court drew an inference from the facts submitted and substituted its view for that of the Board of Review. The trial court did not have jurisdiction to make this ruling when there was sufficient evidence in the record to support the Board of Review's conclusions regarding the reason for Mr. King's discharge. Under the limited scope of review of La. R.S. 23:1634, the trial court erred as matter of law in making its ruling.
Because the trial court erred as matter of law, we must make a de novo determination of whether or not the ruling of the Board of Review was correct. Lewis, 540 So.2d at 496. The Board of Review determined that submission of the falsified doctor's excuse was the reason for Mr. King's discharge. Mr. King testified that he returned to work from a two week absence, worked one day and was absent the following day due to car trouble. At both hearings, Mr. King admitted to submitting the falsified excuse upon his return from the two week absence. Mr. King also testified that upon termination he signed several written warnings, including one related to his submission of the altered excuse and the two week absence.[1] These facts, which include Mr. King's own sworn testimony, support the Board of Review's determination that Mr. King was terminated for submitting the falsified excuse.
The Board of Review's conclusion is correct as a matter of law. Whether or not Mr. King's employer knew of the alteration at the time it accepted the excuse is of no moment. Even if the supervisor knew or suspected the alteration upon accepting the excuse, the employer could still discharge Mr. King and claim the alteration and its associated absences as disqualifying conduct. See Carter v. Blache, 476 So.2d 873, 880 (La.App. 2nd Cir.1985)(wherein the court stated that an employer's election to retain a worker, because the individual is on the job and capable of properly doing the work, is not deemed an acquiescence in unacceptable behavior or a waiver of the right to prove misconduct disqualifying the employee from receipt of unemployment compensation.) Mr. King's act of submitting the altered excuse in an effort to justify his two week absence is misconduct connected with his employment within the meaning of La. R.S. 23:1601.
Because the ruling of the Board of Review is supported by sufficient evidence and is correct as a matter of law, it must be affirmed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed, and the ruling of the Board of Review is reinstated. Mr. King is cast for all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] Mr. King asserts the Board of Review's decision was reversible because it was based on fraud. Specifically, Mr. King alleges that upon his discharge in January, his employer tricked him into signing two warnings dated for September. Because the Board of Review ultimately determined that Mr. King was discharged for submitting the falsified excuse relating to the two week absence, we need not address Mr. King's allegations of fraud concerning the September warnings. The alleged backdated warnings are immaterial considering the Board's decision.