BOUTALL, Judge.
This is an appeal by Southern Hardware and Lumber Company, Inc., regarding an unemployment compensation claim which was filed by one of its former employees. The issue in the case is whether the employee terminated his employment with work-connected “good cause” so as to entitle him to compensation benefits.
The initial claim was filed by Thomas J. Vesich, on February 11, 1968, one week after he resigned from his job. On March 6, 1968, the Agency determined that the claimant had quit without good cause which disqualified him from unemployment benefits. On April 15, 1968, a hearing was conducted before the Referee of the Appeals Tribunal for the Division of Employment Security in New Orleans at which time testimony was received for the first time and the initial decision was reversed. Subsequently this decision was affirmed by both the Louisiana Board of Review and the Civil District Court for the Parish of Orleans and is now before us on appeal.
The case arises out of the following set of facts: Claimant Vesich was employed by Southern Hardware and Lumber Company, Inc., as an “order filler,” a position which he had held for eight years. On Friday, February 1, 1968, three minutes prior to quitting time he was given an order to fill. Since it was late and since he was not given the proper requisition ticket at that time, he did not begin to fill the order that day. He did, though, begin this task upon reporting to work the following morning. However, before he had finished, the customer arrived and became irate when he learned that his order was not completed. He began complaining, stating that he (the employee) spent too much time in the front office. The claimant finally told the customer that he was a “damn liar” whereupon the customer became infuriated and struck the claimant in the mouth, knocking out a tooth and splitting his lip.
When Mr. Robinson, President of Southern Hardware, returned, Vesich related the incident to him and at that time Mr. Robinson advised the claimant that “the customer is always right.” There was apparently some discussion at this time between Ve-sich and Mr. Robinson regarding whether Mr. Vesich would remain in the employ of Southern Hardware thereafter although Vesich did not give Mr. Robinson an immediate decision on his plans. Vesich instead thought about Mr. Robinson’s statement over the weekend that “the customer is always right” and believing that his boss “was more in favor of the customer” than himself, informed him on Monday that he was quitting. Vesich’s subsequent claim for unemployment compensation forms the basis for the dispute which is the subject of this suit.
The Louisiana Legislature, in enacting the Louisiana Employment Security Law attempted to provide for a type of security against unemployment which it deemed to *782 be “a serious menace to the health, morals and welfare of the people of this state.” LSA-R.S. 23:1471. Accordingly, it provided for the compulsory setting aside of unemployment reserves to be used for the benefit of unemployed persons. However, the right of such person to receive these benefits is not without limits, and LSA-R.S. 23:1601 specifically disqualifies any individual who has left his employment without “good cause.” That statute provides in pertinent part as follows:
“An individual shall be disqualified for benefits:
“(1) If the administrator finds that he has left his employment without good cause connected with his employment.”
See also: Richardson v. Brown, 139 So.2d 54 (La.App.2d Cir. 1962); Gladson v. Brown, 134 So.2d 660 (La.App.3d Cir. 1961); Abrams v. Sharp, 115 So.2d 880 (La.App.Orl.1959).
The issue then which is presented for our determination is whether the action of Thomas Vesich in terminating his employment was with “good cause connected with his employment” within the meaning of the above-quoted provision so as to qualify him to receive unemployment compensation.
In discussing the meaning which has been given the term “good cause,” the following statement appears in 81 C.J.S. Social Security and Public Welfare § 167, at pp. 253 and 254:
“It has been said to be impossible to give a general definition of good cause. In general ‘good cause,’ as used in an unemployment compensation statute, means such a cause as justifies an employee’s voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the aver- ' age able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms ‘good cause’ and ‘personal reasons’ connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman and not to the super-sensitive; and one who leaves because of the distasteful character and habits of his fellow employees, or because the work offends his religious or moral principles, or because his family objects to the type of work, does not leave for good cause within the meaning of the unemployment compensation statutes.”
A careful review of the evidence and testimony contained in the record convinces us that the claimant did terminate his employment with sufficient cause so as to avoid disqualification from benefits under LSA-R.S. 23:1601(1).
In his written reasons for judgment the trial judge stated:
“While the Court recognizes that an employee owes a duty of loyalty to his employer, he likewise has a right to expect his employer to support him when he is right. In the instant case, there can be no question but that the employee was right in that the customer had no right to commit a physical assault and battery on the employee under the facts and circumstances of this case. Accordingly, when employee, after having a tooth knocked out and his lip split, reported the incident to his employer who thereupon advised him that ‘the customer is always right,’ employee had suf *783 ficient reason under these circumstances, in the opinion of this Court, to leave his employment.”
We are in agreement with the reasoning of the trial court. Regardless of whether we might consider Mr. Vesich as being indiscreet in calling the customer a “damn liar,” we do not feel the customer was justified in responding with force to Ve-sich’s statement.
The record discloses that Mr. Vesich was apparently performing his job conscientiously when he was accused by the customer of wasting time. It is unreasonable to assume that an employee who is given an order to fill three minutes before closing time will stay after hours to complete it unless he is specifically asked to do so. Mr. Vesich was not requested to fill the order on the day it came in. Neither was he given the proper order ticket on the day the order was received. Under these circumstances, it was reasonable for him to begin processing the customer’s order the following morning and since he was doing just this at the time the customer wrongfully accused him of procrastination, we are of the opinion that Mr. Vesich was justified in verbally defending his actions to the customer.
In addition the record discloses that Mr. Robinson did not consider Mr. Vesich’s statement to the customer sufficient cause for firing Vesich. After the incident, upon hearing of Mr. Vesich’s candid version of the events leading up to his assault and battery by the customer, Mr. Robinson did not terminate his employment with the company. Instead he left it up to Mr. Vesich’s discretion whether he wanted to continue in the employ of Southern Hardware. Within a reasonable time thereafter, on Monday, the first work day after the incident, since Sunday was a holiday, Mr. Vesich told Mr. Robinson he no longer wished to work for the company.
Mr. Vesich had worked for Southern Hardware for eight years and during this time period apparently had given good and faithful service to his employer. Southern Hardware had the opportunity at the time of the hearing before the Appeals Tribunal to present whatever evidence was most favorable to it relative to the caliber of work of Mr. Vesich and especially the facts concerned with this particular incident. However Southern Hardware came forward with no witnesses or other evidence which might indict Mr. Vesich of procrastination or other lack of diligence in the performance of his work. Neither did Southern Hardware attempt to prove that Vesich misunderstood the tenor in which Mr. Robinson said “the customer is always right.” Therefore we must assume Mr. Robinson meant to convey to Vesich the fact that he felt he was wrong in verbally defending himself.
There is no doubt in this court’s mind that Mr. Vesich terminated his employment solely because he felt that his employer should have shown more concern about him at the time of his injury and should have confirmed to the customer and to him that he had been properly doing his job. We are of the opinion that under the facts of this case, the claimant could reasonably have expected his employer to have supported him as opposed to the customer. However Mr. Vesich’s injuries were met with cold indifference by his employer. Although he had lost a tooth and was bleeding profusely about the mouth area, Mr. Vesich was not even offered the time off with which to see the company doctor. He was merely given to understand that he should not have defended himself to a customer who wrongfully accused him of procrastination because “the customer is always right.” We agree with the trial court that the employer should have supported his employee when a customer wrongfully struck him and should have expressed such support to the employee as well as to the customer. An employer who manifests such little regard for the welfare of his employee cannot expect such employee to continue working for him thereafter.
*784 in support of its position that Vesich terminated his employment without good cause, Southern Hardware cites the court to Richardson v. Brown, 139 So.2d 54 (La.App.2d Cir. 1962); Gladson v. Brown, 134 So.2d 660 (La.App.3rd Cir. 1962); and Abrams v. Sharp, 115 So.2d 880 (La.App.Orl.1959). In each of these cases the court found that the employee terminated his employment without good cause. However we find these three cases inapposite to the facts presently before us. In the Abrams case, the claimant terminated his employment because the employer failed to grant a wage increase on the employee’s demand. In the Gladson case, the reason the employee terminated work was not job connected as the statute requires but due to an accident occurring during off duty hours. In the Richardson case, the court apparently recognized the right of the employee to terminate employment because he feared his employer would do him bodily harm. However the court went on to find that this particular claimant, Earnest Richardson, did not quit for this reason.
Although there is no Louisiana case directly in point, we believe that it was the intention of the Legislature in enacting the Employment Security Law to provide for benefits for this claimant. We are of the opinion that the provisions of this statute are to be • construed liberally in favor of the unemployed worker. As was stated in Walker v. Brown, 160 So.2d 258 (La.App.2d Cir. 1964):
“If there is any ambiguity in the act, it should be resolved in favor of the employee as the law is well settled that the statute should be interpreted liberally so as to extend its benefits as far as possible within the bounds imposed by the expressed legislative restrictions. See Sewell v. Sharp (La.App. 2 Cir. 1958) 102 So.2d 259.”
We therefore are convinced that under a ■ liberal interpretation of the law coupled with facts which we feel are favorable to the employee, an employee’s terminating his employment because the employer failed to support him when a customer wrongfully committed an assault and battery on his person constitutes “good cause” within the terms of the Act for terminating employment and therefore this claimant is not disqualified from receiving unemployment compensation benefits.
For the foregoing reasons the judgment of the lower court is hereby affirmed. Costs of this proceeding to be borne by plaintiff-appellant, Southern Hardware and Lumber Company, Inc.
Affirmed.