781 So.2d 864 (2001)
Kristy GUILLOT, Plaintiff-Appellant,
v.
The ARBOR GROUP, LLC and the State of Louisiana, Department of Labor, Defendants-Appellees.
No. 34,469-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2001.
*866 Theus, Grisham, Davis & Leigh by Phillip D. Myers, Monroe, LA, Counsel for Appellant.
J. Jerome Burden, Baton Rouge, LA, J. Clay Carroll, Jonesboro, LA, Counsel for Appellees.
Before WILLIAMS, CARAWAY & DREW, JJ.
DREW, J.
Kristy Guillot, an unemployment compensation claimant, appealed a judgment of the district court which affirmed administrative rulings rejecting her claim for benefits. Asserting that the previous rulings were based on legally insufficient evidence, the claimant urged that the trial court erred in affirming the denial of her request for unemployment benefits. Guillot maintained she was entitled to unemployment benefits because she left her employment with the Arbor for good cause attributable to a substantial change in her employment made by her employer. For the following reasons, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
From September 1997 until she quit effective February 5, 1999, Guillot worked at the Arbor, an assisted living facility for the elderly. The claimant was program director of the Terrace, the unit for residents with Alzheimer's disease at the Arbor. After claimant left her employment, she applied for unemployment benefits.
Following an agency determination that claimant left her employment for personal reasons, the claimant appealed. The Administrative Law Judge (ALJ) held a hearing and heard testimony. Thereafter, the ALJ made the following factual findings:
The claimant worked for the named employer from approximately September, 1997, until February 5, 1999. She was the program director of the Terrace, which is the Alzheimer's unit of the facility.
In December 1997, the RN on staff was killed in an automobile accident. She was not replaced. The claimant felt that the nurse should have been replaced so there would be someone on staff in charge of doing medication monitoring. *867 After the death of the nurse, the care attendants were passing out medication. No employee of the facility however, even if they are a nurse, is allowed to dispense medicine. The home health employees can do this, but if a nurse is hired at the facility, home health persons cannot come to the facility. For this reason, another nurse was not hired.
In November 1998, during a budget meeting, it was decided to combine housekeeping duties. A housekeeper was discharged and was not replaced, but her duties were transferred to other employees, especially some on the night shift. Additionally, some of the housekeeping responsibilities were delegated to the care attendants at the facility. The claimant disagreed with this action, and felt that the care attendants were under too much stress having to do housekeeping duties as well as their own duties. She discussed this with her supervisor, but the housekeeper was not replaced.
The claimant had been approached by family members who wanted "Do Not Resuscitate Forms" to be available at the facility. The employer felt, however, that this would be a liability and that the family should contact the doctor or an attorney for these forms. The claimant mentioned this to the Director of Operations, but no forms were provided.
While the claimant was employed, the facility bought a van to transport individuals. The van was not accessible to handicapped persons and it was difficult for them to get on and off the van. The claimant felt that this was not in the residents' best interest; however, Louisiana Law does not require or suggest a handicapped access van be provided.
The claimant was told when she was hired, by a previous administrator, that insurance would be provided after one year. After this year, there was a different administrator and still no insurance had been provided. As of the date of the hearing, the employer does not provide insurance to any employees.
The incident which actually caused the claimant to decide to quit, even though she was dissatisfied for several reasons, was in early January, 1999, when she learned that the Director of Operations had called the weekend activity person with questions about the unit. The claimant was uncomfortable with this and felt that she was not respected. Shortly thereafter, she turned in her resignation.
Noting that the claimant may have had excellent personal reasons for leaving, the ALJ found claimant had not proved her leaving was for good cause attributable to a substantial change in her employment made by her employer. Many of the areas of dissatisfaction had been ongoing since her employment. Therefore, her leaving was held to be under disqualifying conditions. The ALJ modified the date of disqualification from January 28, 1999 to February 5, 1999. Claimant appealed.
The Board of Review affirmed the decision of the ALJ which disqualified claimant from unemployment benefits. Claimant sought judicial review from the district court. In its ruling, the district court noted that La. R.S. 23:1634 mandated that the findings of the Board of Review as to facts are conclusive if supported by sufficient evidence and further noted that no party requested the district court take additional evidence. The district court considered the facts of the case as determined by the ALJ and adopted by the Board of Review. The district court found that the Board of Review applied the correct law and declined to reverse the administrative ruling. This appeal followed.

*868 DISCUSSION
The Louisiana employment security law is remedial in nature. The courts should interpret it to extend its benefits as far as possible within the bounds imposed by express legislative restrictions. Coleman v. Blache, 566 So.2d 181 (La.App. 2d Cir.1990). The standard of judicial review of decisions made by the administrative law tribunal concerning unemployment benefits is governed by La. R.S. 23:1634, which provides in pertinent part:
... the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the [reviewing] court shall be confined to questions of law.
Therefore, on judicial review in unemployment compensation cases, the reviewing court must determine whether the findings of fact by the Board are supported by sufficient evidence and, if so, whether the decision of the Board is correct as a matter of law. Unemployment benefits are awarded in accordance with La. R.S. 23:1600; disqualification criteria for benefits are provided in La. R.S. 23:1601. General Motors Corp. v. Darby, 31516 (La. App.2d Cir.1/22/99), 728 So.2d 516, writ denied, 99-0514 (La.4/9/99), 740 So.2d 632. An individual shall be disqualified for benefits if the administrator finds that he has left his employment from a base period or subsequent employer without good cause attributable to a substantial change made to the employment by the employer. La. R.S. 23:1601(1)(a).
When claimant voluntarily leaves her employment, she must show that she left with good cause connected with her employment in order to receive benefits. Good cause is more than mere dissatisfaction with the working conditions. The good cause contemplated by the statute must be from a cause that would reasonably motivate the average able-bodied and qualified worker in a similar situation to give up his or her employment. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman and not the supersensitive. Good cause connected with employment means a cause connected with working conditions, ability of the employee to continue employment, availability of transportation to and from work, and other factors which affect the employee's ability or right to continue work or which affects the benefits he may receive from his employer either upon continuation of the work or on retirement. Coleman v. Blache, supra.
Among Guillot's numerous complaints about her employment were that the housekeeper for the Terrace was terminated and the work was reassigned to the unit's care workers. Claimant testified that decision left her with the responsibility of delegating housekeeping responsibilities to care attendants. Her request that the housekeeper be rehired was not granted. The care attendants complained to her because the cleaning duties were not in their job descriptions. Their dissatisfaction made her job more stressful. Claimant asserted that she instructed the care attendants to put the residents first and the housekeeping should come last, if anything. However, claimant acknowledged that the care attendants' regular duties included cleaning tasks such as cleaning up urine and feces as they cared for individual residents.
Also, the claimant testified the Arbor administrator informed claimant that the facility's owners were unhappy with the condition of the unit as were the residents' families who expressed objections to the presence of urine, vomit and feces. Claimant also disagreed with the instructions for night care attendants to *869 clean residents' bathrooms while residents slept because she viewed that as an invasion of the residents' space and privacy. Stating she did not have the cooperation of management, claimant concluded it was time for her to leave.
The former Arbor administrator, Connie Culpepper, testified she left her employment when claimant did. Culpepper stated claimant left her job for several reasons. Also disagreeing with the decision to terminate the Terrace housekeeper, Culpepper opined that the owner's plan for the Arbor housekeeper to assist in the Terrace was not adequate.
Testifying for the employer, Mr. Bayles, the Arbor construction administrator and husband of the Arbor's owner, explained that night time care attendants had been found sleeping on the job. Since residents can sometimes be wanderers, it was important to keep night time care attendants close by and watchful. From the hotel business, he had learned that keeping night time employees active with duties avoided the problem of their sleeping on the job. The decision was made to shift some of the cleaning duties to those employees and to supplement with help from the Arbor housekeeper, a plan he stated was working well at the time of trial.
The second complaint which Guillot addressed in her appellate brief was the failure of the employer to supply her with health insurance promised by a former administrator at the Arbor. Culpepper also testified that an administrator who preceded Culpepper in the job had promised insurance but that none was ever provided. Mr. Bayles testified that he was unaware that any previous administrator had promised insurance coverage. Further, the employer had never provided any employee insurance benefits.
Claimant objected to the absence of a registered nurse to administer medication, to the failure of management to provide "Do Not Resuscitate" forms for families and the failure of management to provide a handicapped-accessible van. Mr. Bayles' testimony provided the employer's explanations which were included in the ALJ's findings of fact, above.
Guillot stated that she left her employment because she did not feel she, the care attendants or the residents were being treated fairly by management and that care was "going on a downward spiral." When asked by the ALJ if there was an incident that made her decide to quit, Guillot responded affirmatively; i.e., when the director of operations in early January called the weekend activity person and questioned her about how the unit was running. Claimant concluded that the management did not respect her for what she was doing and that she was in a no-win situation. She expressed her frustration as not being able to get the owner to do certain things she felt the residents needed.
In order to prevail, Guillot must have shown she left her job for good cause attributable to a substantial change made to the employment by the employer. La. R.S. 23:1601(1)(a). The claimant bears the burden of proving that by a preponderance of the evidence. Thomson v. State, 564 So.2d 756 (La.App. 2d Cir.1990). Since there are no allegations of fraud, this court must review the record to determine whether the findings of fact are supported by sufficient evidence and, if so, whether the decision of the Board is correct as a matter of law. Our careful examination has shown that claimant did not meet her burden of proof.
This court is not making any judgments about the merits of the positions of claimant and the employer concerning certain decisions about residents' care. Claimant was undoubtedly a dedicated and caring employee whose concerns for the residents *870 of the facility were heart-felt and genuine. Testifying for the employer, Mr. Bayles stated that Guillot had been a "great, great employee," did a marvelous job and had an excellent performance review.
In brief, claimant relied on Buckley v. State, 383 So.2d 52 (La.App. 2d Cir.1980) which held that when there was no substantial evidence to support the decision of the board or where the evidence is so vacuous, the court may, if other evidence warrants, set aside the ruling of the board. Denied benefits by the board and the trial court, that claimant testified that she was subjected to egregious harassment and unfair treatment[1] by the manager. Claimant's testimony was corroborated by the testimony of two co-workers. The only employer's testimony was from an assistant manager who was at the store only a month before claimant left. Most of the incidents occurred prior to his arrival. Although he had discussed claimant's attitude with her a few days before she quit, he testified her attitude had improved and she was an efficient worker. The appellate court found there was no substantial evidence to support the board and district court's findings that she had left her employment without good cause.
That case is factually distinguishable from the present dispute. Guillot did not show by preponderance of the evidence that she left her job for good cause attributable to a substantial change made to the employment by the employer. While she strenuously objected to the firing of the Terrace's housekeeper, that change resulted in her having to assign care attendants additional housekeeping duties. However, she already supervised their work and she acknowledged that the care attendants routinely did cleaning duties while caring for the residents.
While Guillot objected to the employer's failure to provide insurance, she and all other employees never received insurance benefits. "Do Not Resuscitate Forms" were never provided due to business decisions made by the employer. Likewise, the type of van purchased to transport the residents and the decision not to hire a nurse were also business policy decisions of the employer.
Dissatisfaction with working conditions does not constitute "good cause" unless the dissatisfaction is based on discriminatory, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began. Nason v. Louisiana Dept. of Employment Sec., 475 So.2d 85 (La.App. 2d Cir.1985), writ denied, 478 So.2d 149 (La.1985); Lewis v. Administrator, 540 So.2d 491 (La. App. 1st Cir.1989). In both Nason and Lewis, supra, the claimants were entitled to benefits because they had been given substantial decreases in wages.
In Coleman v. Blache, supra, the library employee was twice placed upon probation for sullenness, poor attitude, and criticism of others. During the second probation, her supervisor extended the probation period. Claimant requested the library director review the matter and terminate the probation. If the director's conclusion was unfavorable, claimant stated she would resign "with no hard feelings." The director *871 found claimant's supervisor acted properly and claimant resigned. The claimant was not entitled to benefits because she voluntarily left without good cause when she resigned rather than to modify her behavior to accommodate the reasonable demands of her employer.
In Rogers v. Doyal, 215 So.2d 377 (La. App. 2d Cir.1968), the claimant quit because she objected to being changed from the day to the night shift because it interfered with her time with her children. The legal evidence supported the finding that claimant left for personal reasons and was not qualified for benefits. In Blanke v. Masaraccia, 470 So.2d 332 (La.App. 5th Cir.1985), the claimant quit due to his increased work and insufficient pay raise. Before the promotion and pay raise, claimant was advised of the increased duties and hours. The claimant left voluntarily because he was dissatisfied; that did not constitute the statutorily required good cause.
While this claimant was dissatisfied and had many seemingly legitimate complaints and concerns, the evidence does not show that she left due to discriminatory, unfair or arbitrary treatment, or upon a substantial change in wages or working conditions from those in force at the time the claimant's position began. This record supports the administrative and trial court decisions that Guillot is ineligible to receive unemployment benefits. The claimant did not sustain her burden of establishing that she left her employment for good cause attributable to a substantial change made to the employment by the employer.
Therefore, the judgment of the trial court is affirmed. In accordance with La. R.S. 23:1692, no costs are assessed.
AFFIRMED.
NOTES
[1] Store manager focused shoplifting camera on claimant for extended periods; would not let her have Friday off because she was office personnel, but would not pay her wages received by office personnel; never gave her a merit pay increase; changed her day off every week while permitting other employees to have a regular day off; followed her when she shopped in the store; insinuated she was not trustworthy by removing employees' purses when she came to work at the service deck; and refused to pay her for three days when she was subpoenaed as a witness while another employee from another TG & Y store was paid when subpoenaed in the same trial.