| .WALTER I. LANIER, Jr., J. Pro Tern.
Larry Woods, (claimant), a former employee of Cameco Industries, (employer), appeals the district court’s affirmance of a decision of the Board of Review for the Office of Employment Security denying him unemployment compensation benefits. The district court ruled there was sufficient, competent evidence to support the denial of unemployment compensation benefits based on Woods’ misconduct (insubordination). This devolutive appeal followed.
FACTS
On January 14, 1999, Woods was discharged for insubordination associated with his employment. Following his termination, he applied for unemployment compensation benefits. On February 18, 1999, he was notified in writing by the Louisiana Department of Labor that he was disqualified from receiving benefits. The disqualification notice provided, in pertinent part:
YOU WERE DISCHARGED FROM YOUR EMPLOYMENT BECAUSE OF INSUBORDINATION TO YOUR EMPLOYER/SUPERVISOR. YOUR ACTIONS WERE WITHOUT PROVOCATION. YOUR DISCHARGE WAS FOR MISCONDUCT CONNECTED WITH THE EMPLOYMENT.
Woods appealed the department’s decision to an administrative law judge (ALJ). A hearing was held on May 26, 1999. The findings of fact, as determined by the ALJ, are as follows:
The claimant worked for the above named employer from October 27, 1997, *372 until January 14, 1999. He was employed full-time as a material handler, earning $8.50 per hour. The claimant’s main job duty was to sand parts. He was discharged from the employment by Brett Hebert, Supervisor, and Brian Ro-drigue, Supervisor. The reason for his discharge was lack of teamwork, i.e., the claimant had a problem following supervisory instructions.
On June 1, 1998, the employer had a meeting with the claimant to discuss his removal from welding school. The claimant had asked the employer to send him to welding school. They agreed. However, problems existed at the school. During this time, it was brought to the claimant’s attention that frequently he would not respond to instructions and do something when asked to. The claimant was informed that he needed to have a more consistent attitude.
|3On August 24, 1998, the claimant asked Brett Hebert, Supervisor, if he could have some parts blasted so he wouldn’t have to sand them. Hebert informed the claimant that they did not have time in the blast booth to blast the parts. On the following day, the claimant had the parts blasted. Some of the parts had to be reblasted because they were not clean. When Hebert questioned the claimant about having the parts blasted, the claimant indicated that he did not have time to sand them so he had them blasted. Hebert warned the claimant that the next time he was given instructions and did not obey them, he would be issued a written warning.
On August 26, 1998, the claimant informed a co-worker that his job was to sand and he was not going to hang the parts that he had to re-sand. Hebert informed the claimant that if he had to re-sand the part, then he also had to hang it on the line.
On November 4, 1998, the claimant informed a co-worker that he would not sand parts because they were not needed. When Hebert talked to the claimant, the claimant indicated the parts were passing him by. When asked by Hebert why he was not sanding the parts, the claimant indicated that “it doesn’t pay to sand them ... because the line doesn’t need them.” Hebert instructed the claimant that he must sand the parts if they are on the line whether or not he believed they were needed.
On approximately November 11, 1998, the claimant was given a performance appraisal. In this appraisal, he was rated as “needs improvement in productivity, interpersonal relationships, and independence.” The performance appraisal notes that the claimant needs to work as a team player. The claimant refused to sign the performance appraisal, indicating that that was not him. The performance appraisal allows an employee to attach appropriate comments to the performance appraisal if they disagree with any areas. The claimant did not attach any written comments to the appraisal. On January 12, 1999, Richard Thompson, Crew Chief, informed the claimant that he had not finished sanding a cross frame. The claimant maintains that he had sanded the parts that were marked to be sanded. Thompson informed him that it was not done completely and he should sand all the cross frame. The claimant informed Thompson that he would not do it. Thompson then informed the claimant that if he did not do it, he could leave the premises. The claimant further informed Thompson that if he fired him, he would have hell to pay. According to written documentation by Thompson, the claimant informed him that he (the claimant) was 20 years older and that he would treat *373 Thompson like his son. Thompson immediately notified Hebert of the situation. The claimant denies refusing to sand the cross frame or threatening Thompson. He does admit he told Thompson that he would allow him to talk in a certain way to him at work, but not off the clock.
After Thompson reported the incident to Hebert, Hebert went to talk to the claimant. Hebert found that the cross frame had been sanded. When questioned by Hebert, the claimant denied refusing to sand the cross frames.
14As a result of the claimant’s continuing actions, he was discharged from the employment.
The ALJ ruled that Woods’ actions showed a substantial disregard of his duties and obligation to his employer. Based upon this finding, the ALJ. affirmed the department’s denial of Woods’ claim for unemployment benefits. Defendant sought review of the ALJ’s decision with the Louisiana Board of Review (the Board). In a written decision issued June 25, 1999, the Board affirmed the denial of benefits, adopting the findings of fact and conclusions of law of the ALJ.
Woods next sought judicial review of the Board’s decision in the 23rd Judicial District Court, Parish of Assumption. Access from the executive branch to the judicial branch is provided for in La. R.S. 23:1634. See La. Const, of 1974, art. I, § 22. In his petition for judicial review, Woods prayed that the decision of the Board be reversed and/or remanded for taking of additional evidence.
The district court Judge remanded the case to the ALJ and gave the following rationale for doing so:
As the transcript reflects, the Administrative Law Judge allowed hearsay testimony from the defendant; however, the claimant was not allowed hearsay testimony from his witnesses. Numerous caselaw and statutes permit the use of hearsay testimony in an administrative hearing. Without reflecting on the rulings and findings of fact of the Administrative Law Judge, this case is remanded to the Administrative Law Judge for not allowing the claimant to use hearsay evidence and allowing the defendant to use hearsay evidence. The jurisprudence allows hearsay evidence; therefore, the claimant should be given the same opportunity as the defendant to use hearsay evidence to demonstrate his case. (Emphasis added)
The hearing on remand before the ALJ was held on May 17, 2000. At the start of the hearing, the ALJ stated that “[t]he hearing is a result of a remand order from the district court in order to allow the
claimant’s witnesses to give hearsay evidence regarding the claimant’s discharge for insubordination and/or refusal to perform work as assigned.” The following are excerpts from the transcript of the remand hearing:
Judge: Okay. Mr. Woods, do you have any questions for Mr. Lewis?
Claimant: Yes. Most of the questions, I have Harold, is going to be hearsay.
1 Judge: Well, just don’t worry about the hearsay. Just ask your questions.
Claimant: No, I’m telling him, that’s what most of the questions are going to be about.
Judge: Ask your questions.
Claimant: Okay, the only thing I’m interested in, is, during my employment there, you have heard Richard probably getting with a bunch of other employees over there and they would speak very bad about me. Do you know anything about that?
Claimant: Okay. Now, for Richard, I’m talking about from other employees, that would come to you and say, man, Richard, for example, Richard said this about Larry. You know, have any of that, was any of that taking place over there? *374 Have you ever heard other people call me—
Judge: Do you understand the question?
Lewis: Yeah.
Judge: Okay. Did you hear anyone else say that Richard had said something bad about Mr. Woods? ■
Lewis: No, no. I never heard anyone say that. In other words, the question was that, did Richard say it, I didn’t hear it.
Claimant: Right, because I’m going to show, I’m going to where — Mr. Thompson’s hearsay cost me my job. His hearsay. His hearsay cost me my job. It cost me my employment. So, I’m—
Judge: Well, we already know that you were taken off of his crew. That’s a fact, so, let’s get on to what you wanted to ask him.
Claimant: Right. Right. But — Thank you. Now, during this span that I was no longer on Mr. Thompson’s crew, have you ever heard, or anyone come to you, explaining to you that, I was being badmouthed by Mr. Thompson?
Lewis: No.
Claimant: No? Not even once? You haven’t heard? You didn’t hear anything? Whether you heard it from me, or anyone, you didn’t hear anything?
Lewis: Let me say this. I can’t say Thompson said it. Now, there was conversation that was talked about, you know, but I, the reason why I’m saying I didn’t hear it, is because I wasn’t directly in that conversation. I was maybe told that by a third party. Something like that.
Judge: So somebody told you that Thompson was complaining that Larry didn’t want to do what he was supposed to do?
Lewis: Yes.
Judge: Okay.
Claimant: And this was what, weeks, months, after I was no longer on his crew? Right?
Lewis: I can’t say that, I don’t—
Judge: You don’t remember whether he was on the crew or not?
Lewis: Right.
Judge: Right.
| ^Claimant: Well, Harold, the purpose of the hearing here today — anything you heard. I don’t care where it came from, where it came from, if you heard it, we want to hear it today. That’s what we’re in here for. It doesn’t matter if it came from a third, fourth, fifth party.
Judge: Well, he’s already answered that question.
Following the remand hearing, the case was again reviewed by the Board. In a five to two decision, the majority of the Board again affirmed the ALJ’s decision. The two dissenting members of the Board found that Brett Hebert’s (Cameco’s representative) testimony regarding the final incident was hearsay. Hebert had no first-hand testimony about the final incident. The dissenters stated that because the jurisprudence indicates that a discharge cannot be based on hearsay evidence when the other party refutes that evidence, Woods was terminated without misconduct connected with his employment. They recommended that benefits be allowed.
Thereafter, on December 1, 2000, the district court issued written reasons for judgment wherein it found that the additional hearsay testimony introduced by Woods at the remand hearing was more harmful than helpful to Woods’ claim for benefits. The court concluded that the evidence presented by Cameco was sufficient to support the Board’s holding that the ALJ’s determination that Woods was discharged for misconduct (insubordination) was correct. The district court affirmed the denial of benefits.
HEARSAY AS COMPETENT EVIDENCE
In a pro se brief written in the form of a letter and without compliance with our court rules, Woods complains that all of the witnesses called to testify at the administrative hearing provided perjured testimony that caused the denial of his unemployment benefits. Although Woods’ brief fails to present detailed argument, he appears to argue that the ALJ should not have found the witnesses credible. Woods *375 also objects to the use of hearsay testimony at the hearing. However, he fails to provide briefed argument to support his assertions. Woods appears to argue that the finding that he was terminated for insubordination is not supported by competent |7evidence since the ALJ, and ultimately the Board considered hearsay evidence in reaching its conclusion.
Unemployment benefits are awarded in accordance with La. R.S. 23:1600; disqualification criteria for benefits are provided in La. R.S. 23:1601. General Motors Corporation v. Darby, 31516, p. 4 (La.App. 2 Cir. 1/22/99), 728 So.2d 516, 519, writ denied, 99-0514 (La.4/9/99), 740 So.2d 632. An individual who is found to have been discharged from his employment for misconduct connected with his employment shall be disqualified from unemployment compensation benefits. La. R.S. 23:1601. Where the employer seeks to deny benefits because of employee misconduct, the burden of proof is on the employer. Holmes v. Forster, 00-0632, p. 3 (La.App. 4 Cir. 2/14/01), 781 So.2d 656, 659; Banks v. Administrator of Department of Employment Security of State of Louisiana, 393 So.2d 696, 699 (La.1981).
The standard of judicial review of decisions made by an administrative law tribunal concerning unemployment compensation benefits is governed by La. R.S. 23:1634(B) which provides, in part:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Therefore, under La. R.S. 23:1634, our review is limited to whether the facts: 1) are supported by the evidence, and 2) whether the facts justify the action taken as a matter of law. Simmons v. Houston, 98-2662, p. 4 (La.App. 4 Cir. 5/12/99), 737 So.2d 220, 222; Southeastern Louisiana University v. Shelton, 431 So.2d 432, 435 (La.App. 1 Cir.1983).
The first issue Woods raises is that his case was based upon lies and perjured testimony intended to block his unemployment benefits, thus, apparently arguing that the witnesses should not have been found credible. We do not have the jurisdiction or authority to disturb the findings of fact involving questions of weight and witness ^credibility. Courts may not disturb factual findings of the Board of Review when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. King v. Tangipahoa Parish Police Jury, 96-0934, p. 4 (La.App. 1 Cir. 2/14/97), 691 So.2d 194, 196. Assessment of a witness’s credibility is the function of the ALJ presiding over the administrative hearing, and not that of the court in a judicial review.
Next, Woods challenges Cameco’s use of hearsay evidence to prove that he was terminated for misconduct associated with his employment. As previously noted, in cases involving termination for employee misconduct, the employer bears the burden of proving the alleged misconduct connected with the employment. To meet this burden the employer is required to provide sufficient legal and competent evidence. Banks v. Administrator of Dept. of Employment, 393 So.2d at 699.
 The usual rules of evidence do not apply to an employment security administrative hearing and, therefore, hearsay is admissible. La. R.S. 23:1631; Wilkerson v. State, Office of Employment Security, 439 So.2d 506, 508 (La.App. 1 Cir.1983). Nevertheless, the factual findings of the administrative agency must be supported by competent evidence.
*376 An error on a ruling that admits evidence cannot be availed of on appeal unless a substantial right of the party is affected and a timely (contemporaneous) objection is made stating the ground of the objection. La. C.E. art. 103; La. C.C.P. art. 1635; Kose v. Cablevision of Shreveport, 32,855, p. 10 (La.App. 2 Cir. 4/5/00), 755 So.2d 1039, 1048, writ denied, 764 So.2d 964 (La.2000); Bienvenu v. Dudley, 95 0547, pp. 6-7 (La.App. 1 Cir. 10/3/96), 682 So.2d 281, 285-286, units denied, 96-2661 and 96-2673 (La.12/13/96), 692 So.2d 1069 and 1070; F. Maraist, Evidence and Proof, 19 Louisiana Civil Law Treatise § 3.6, p. 35 (1999). Cf. La.C.Cr.P. art. 841. When hearsay evidence is not timely objected to, it becomes competent evidence and may be considered as any 19other admissible evidence.[2] State v. Marcal, 388 So.2d 656, 660-661 (La.1980), cert. denied, 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981); State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, writ denied 98-0792 (La.9/16/98), 721 So.2d 477, 709 So.2d 921, 926.
The record not only shows that the parties did not object to the use of hearsay, but that Woods won a remand from the district court that allowed him to present hearsay evidence to the ALJ for consideration by the Board and district court.
Further, a review of the record on appeal shows that the documentary records of the administrative proceedings prior to the first ALJ hearing were filed into evidence at that hearing. They are found at pages 7 through 37 of the record. At the beginning of the first ALJ hearing, the ALJ referred to these records and told the parties that she would ask them to affirm on the record that they had reviewed them. Thereafter, the record shows the following:
Judge: The documents of the Department of Labor, hereinafter referred to as the agency are marked and identified as Agency Exhibit 1, the notice to appear for the healing, addressed to both parties, concerning the issue of Larry Woods being discharged from the employment because of it — because of insubordination and/or due to refusal to perform work as assigned. It will be decided if the discharge was for misconduct connected with the employment. Attached to that is Mr. Woods’ request for subpoenas for Benoit and Lewis and copies of those two subpoenas. Agency Exhibit 2 is fourteen pages, consisting of page 1, the notice of appeal, which was held timely from a previous hearing under docket number W 00598 at 1999, which considered only the timeliness issue. The appeal was filed on behalf of Larry Woods. Page 3, the decision appealed, is the notice of claim determination, mailed 2/18/99, which disqualifies Larry Woods from unemployment benefits effective January 14, 1999. It reads in part, “You were discharged from your employment because of insubordination to your employer/supervisor. Your actions were without provocation. Your discharge was for misconduct connected with the employment.” That decision I ipis rendered under section 1601(2) of the Louisiana Employment Security Law. Pages 4, 5, 6, 7, 8, 9,10, and 11, are documents submitted by the employer to the unemployment office regarding the separation of Larry Woods, and prior to the hearing, both parties did review those documents. Mr. Hebert, can you confirm that you reviewed the documents that the employer sent?
Hebert: Yes.
Judge: And Mr. Woods, can you confirm reviewing those documents?
Claimant: Yes.
Judge: Pages 12,13, and 14, is a statement taken by the local office from Mr. Woods, and again, both parties did review the statement before the hearing. Mr. Hebert, can you confirm reviewing the statement?
Hebert: Yes.
Judge: And Mr. Woods, can you confirm — confirm reviewing your statement?
Claimant: Yes.
'Included in these records are, among other things, written performance appraisals of Woods, written statements of Woods and written statements by Thomas Reckert (Human Resource Manager), *377 Richard Thompson (Crew Chief) and the Paint Supervisor (signature not legible). No objection was made to the use of these documents as evidence. Accordingly, any post hearing objection to the admissibility of this evidence as hearsay is untimely and has been waived. This is competent evidence for the purposes of this action.
A review of the record shows that the facts found by the ALJ and the Board are supported by competent evidence and these facts, as a matter of law, justify the decision to deny benefits. La. R.S. 23:1634 B.
Woods’ assignments of error are without merit.
DECREE
For the foregoing reasons, the judgment of the district court is correct and is affirmed. Woods is cast for the cost of this appeal.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.

. The holdings in Shelton and Wilkerson that hearsay is admissible in the administrative proceedings but cannot be thereafter considered in the judicial proceedings (1) does not properly construe La. R.S. 23:1631 and 23:1634 together; (2) is inconsistent; (3) does not take into account the provisions of La. C.E. art. 103 and La. C.C.P. art. 1635; and (4) creates a trap for the unwary.