994 So.2d 687 (2008)
GONZALES HOME HEALTH CARE, L.L.C. d/b/a Southern Nursing Home Health
v.
Tammy D. FELDER and The Louisiana Department of Labor, Office of Regulatory Services, John D. Smith, Administrator.
No. 2008 CA 0798.
Court of Appeal of Louisiana, First Circuit.
September 26, 2008.
*689 Floyd J. Falcon, Jr., Benjamin M. Chapman, Baton Rouge, LA, for Plaintiff/Appellant, Gonzales Home Health Care, L.L.C. d/b/a Southern Nursing Home Health.
Cynthia T. Batiste, Baton Rouge, LA, for Defendant/Appellee, Louisiana Department of Labor.
Before PETTIGREW, McDONALD, and HUGHES, JJ.
McDONALD, J.
This is an appeal from a district court judgment that affirmed an administrative determination by the Board of Review for the Office of Regulatory Services of the Louisiana Department of Labor that affirmed the decision of the administrative law judge ("ALJ"), which found the claimant, Tammy Felder, was entitled to unemployment compensation benefits when she quit her job because she felt her safety was threatened. We reverse and remand.

FACTS
Ms. Felder was employed by Gonzales Home Health Care, L.L.C., doing business as Southern Nursing Home Health ("GHHC") from March 1, 2006 until February 28, 2007 as a billing manager. In February 2007, Ms. Felder gave GHHC a two-week notice that she was resigning her position, effective March 2, 2007, to take another job at her mother's restaurant.
On Wednesday, February 28, 2007, Ms. Felder and a subordinate co-worker, Ms. Marshall, got into a verbal altercation that resulted in Ms. Marshall being suspended without pay for two days. After Ms. Marshall was sent home and given the two-day suspension, Ms. Felder informed GHHC that she was quitting. Ms. Felder worked the remainder of the day, but she did not work the final two days of her notice period.
Shortly after Ms. Felder left GHHC, her mother sold her restaurant business and Ms. Felder was without employment. She applied for and was denied unemployment compensation benefits, as the agency *690 found that she left GHHC for personal reasons and without good cause attributable to a substantial change made to the employment by the employer pursuant to La. R.S. 23:1601(1)(a).
Ms. Felder appealed the agency determination before an ALJ. The ALJ conducted a hearing by telephone and took testimony from Ms. Felder, the employer's representative, Mr. Dickerson, and the employer's witness, Ms. Mays. The ALJ reversed the agency determination and awarded Ms. Felder benefits. The ALJ found that Ms. Felder voluntarily quit her job because she felt that her safety was threatened. The ALJ concluded this was for good cause attributable to a substantial change made to the employment by the employer.
GHHC appealed the ALJ's ruling to the Board of Review of the Office of Regulatory Services of the Louisiana Department of Labor (the "Board"). The Board found that the case was properly decided, adopted the ALJ's finding of facts and opinion, and affirmed the ruling.
GHHC filed a petition for judicial review in the Nineteenth Judicial District Court, naming the Louisiana Department of Labor, Office of Regulatory Services and Ms. Felder as the defendants. The district court affirmed the Board's decision, and GHHC took this devolutive appeal.

GOOD CAUSE FOR RESIGNATION
GHHC contends that the district court erred in affirming the Board's decision, as there is not sufficient evidence to support a legal conclusion that Ms. Felder's fear was well-founded and reasonable. Thus, GHHC argues that Ms. Felder's quitting her job two days before the end of her notice period was for personal reasons and without good cause attributable to a substantial change made in employment by the employer. La. R.S. 23:1601(1)(a).
Louisiana Revised Statutes 23:1601 provides the disqualification criteria in instances where the employee voluntarily quits employment. In part, the statute states:
An individual shall be disqualified for benefits:
(1)(a) If the administrator finds that he has left his employment from a base period or subsequent employer without good cause attributable to a substantial change made to the employment by the employer.
When the employer seeks to deny unemployment benefits because of employee misconduct, the burden of proof is on the employer. Fontenet v. Cypress Bayou Casino, XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/8/07), 964 So.2d 1035, 1037. However, when an individual becomes unemployed and the separation issue is leaving, then the burden of proving good cause as required by the statute is placed upon the claimant. Lewis v. Administrator, 540 So.2d 491, 492 (La.App. 1 Cir. 2/28/89). It is well established that the claimant has this responsibility and must do so with a preponderance of evidence. Id.
The scope of appellate review of cases arising under the Louisiana Employment Security Law has been expressly and severely limited by the legislature. Lewis, 540 So.2d at 495-96. Louisiana Revised Statutes 23:1634(B) provides the scope of judicial review as follows:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Thus, judicial review of the findings of the Board is strictly limited to first, *691 a determination of whether the facts are supported by competent evidence, and second, whether the facts, as a matter of law, justify the action taken. Lewis, 540 So.2d at 496; Woods v. Cameco Industries, Inc., XXXX-XXXX, p. 7 (La.App. 1 Cir. 3/28/02), 815 So.2d 370, 375. Judicial review of the findings of the Board does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence, or substituting the views of the court for that of the Board as to the correctness of the facts presented. Id.
Accordingly, we begin by determining whether the ALJ's findings of fact are supported by competent evidence. Woods, XXXX-XXXX at p. 7, 815 So.2d at 375; see also, Banks v. Administrator of Department of Employment Security of State of Louisiana, 393 So.2d 696, 698 (La.1981).
Ms. Felder worked as a billing manager for GHHC from March 1, 2006 to February 28, 2007. The ALJ's decision provides the following factual findings and legal conclusions:
On December 29, 2006, the claimant had a physical altercation with Ms. Marshall, File Clerk. Ms. Marshall pushed the claimant across a desk. The claimant filed an incident report and Ms. Marshall was suspended without pay for two days. On February 16, 2007, the claimant turned in her notice to quit her job on March 2, 2007, to accept other employment. On February 28, 2007, Ms. Marshall stated to the claimant that if she was admonished for arguing that someone was going to get hurt. The claimant began to fear for her safety. She requested and was granted a meeting with William Dickerson, Manager, and Janice Mays, Administrator. At that time, the claimant was informed that Ms. Marshall had had a verbal altercation with a nurse that morning. At this meeting, Ms. Marshall was suspended without pay for two days. At that time, the claimant quit her job because she felt that her safety was threatened by the coworker.
. . .
The claimant voluntarily quit her job because she felt that her safety was threatened. She has proven that there were substantial changes made to the conditions of the employment by the employer, which prompted her decision to leave the job. Therefore, it is determined that she left with good cause attributable to a substantial change made to the employment by the employer. Benefits should not be denied.
Ms. Felder, Mr. Dickerson, and Ms. Mays testified at the hearing. We note that Mr. Dickerson's and Ms. Mays' testimony does not contradict Ms. Felder's testimony. In her testimony, Ms. Felder provided an account of the events that occurred on February 28, 2007, a brief account of her prior December 2006 incident with Ms. Marshall, and GHHC's response to these incidents. She also stated her reasons for quitting.
Concerning her February 28, 2007 verbal confrontation with Ms. Marshall and Ms. Marshall's threatening statement, Ms. Felder testified:
She told me that it was over a McDonald's breakfast sandwich and she told me, I told her that if she didn't change her attitude she could go home for the day because that's the only thing I could do to them. And she told me if I went home, she went home for the day it would be going home for good because somebody was going to get hurt. And so I told Ms. Mays this, and we went to Mr. Dickerson and told Mr. Dickerson this, and she was sent home for two days. I finished my day up. I completed all my work and left instructions on everything else that was to be done *692 on a daily basis and told them that day would be my last day.
Ms. Felder described the December 2006 incident as follows:
A while back she had pushed me across the desk and she got suspended for two days.... I'm not real sure of the date.... I mean it was a while back. I didn't turn my notice in right after it happened. I mean I continued to work for them.... It was probably, I'm trying to think when it was. I think it was like November [of 2006.] I'm not sure. It was, it was wrote up on an incident report.[1]
As to the reasons she gave GHHC for quitting, Ms. Felder testified:
I had turned a two weeks notice in because I was going to work for my mom. And within my two weeks notice, on February 28, a fellow employee threatened me, who I was her supervisor. I went to Ms. Mays and I told Ms. Mays that if she continued to work there, today would be my last day. Because, I didn't know, my life was threatened.
When asked by the ALJ whether she told Mr. Dickerson and Ms. Mays in the meeting that she would quit if they did not fire Ms. Marshall, Ms. Felder replied, "I handed him my key and said well then if that's the case, then you can consider today my last day." After giving this answer, the ALJ asked, "Ms. Felder, did you fear for your life?" Ms. Felder stated "yes." Then Ms. Felder added, "[s]omebody's going to tell you that you are going to get hurt, you know, I mean, yeah, I was scared to go back." The ALJ asked Ms. Felder "[i]s this the only reason you quit your job?" Ms. Felder answered:
Well I had a job offer and I was going to take it and I worked, I come in to work for my mom, she owned a restaurant. About a week into working for her she decided to sell and the restaurant was sold so I have no job. And I would have went back to work for them but because of this.
In her closing statement before the ALJ, Ms. Felder provided some additional information concerning Ms. Marshall's comment, pointed out the December 2006 pushing incident, and she also said that she did not "feel comfortable" with Ms. Marshall receiving a two-day suspension. She stated:
I just want to say that I enjoyed working at Southern Nursing and I would have went back to Southern Nursing when my employer that I was going through did not pan out. I do not think that, you know, it was right for the incident of being threatened, me being the supervisor, never was taken in account for. And, you know, she had already pushed me across the desk once, prior to that. We did not go to lunch after the fact, that, that incident, that I can remember. We, we were also, not be a good word, but we were just, I mean we were work employees. That was it. And because she would, you know, she did threaten me. No, she didn't say my name. But it was in the same minute of whenever the incident with the McDonald's breakfast was going on is when I was threatened. And I did not feel comfortable with her being suspended for two days. I, I felt that, you know, it was a commitment of a safe work environment that should have been taken in effect. And that's it.
Ms. Felder's testimony concerning the events of February 28, 2007, the prior December 2006 incident, and the reasons she gave for leaving two days short of her *693 notice period support the administrative factual findings. This court has held that an employee's sworn testimony alone may constitute sufficient evidence to meet the requirements of La. R.S. 23:1634. Lewis, 540 So.2d at 496. While we may have made different factual findings based on Ms. Felder's testimony, our limited review of the administrative factual findings does not permit the weighing of evidence, drawing of inferences, reevaluation of evidence or substituting the views of the court for that of the Board as to the correctness of the facts presented. Lewis, 540 So.2d at 496. Accordingly, we find that Ms. Felder's testimony is sufficient to supports the ALJ's factual findings.
Now, we must determine whether the facts as a matter of law, justify the action taken. Id. Although La. R.S. 23:1601(2)(a) defines misconduct, the statute does not define what constitutes leaving "without good cause" as provided in La. R.S. 23:1601(1)(a). In reviewing administrative benefits determinations, our Supreme Court has held that if the determination made does not meet "a threshold test of reasonableness," it is erroneous as a matter of law. Banks, 393 So.2d at 699.[2]
The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman and not the supersensitive. Guillot v. Arbor Group, L.L.C., 34,469, p. 4 (La.App. 2 Cir. 3/2/01), 781 So.2d 864, 868. The good cause contemplated by the statute must be from a cause that would reasonably motivate the average able-bodied and qualified worker in a similar situation to give up his or her employment. Id.
Good cause connected with a person's employment means a cause connected with working conditions, ability of the employee to continue the employment, availability of transportation to and from work, and other factors that affect the employee's ability or right to continue work or that affects the benefits he may receive from his employer either upon continuation of the work or on retirement. See Lewis, 540 So.2d at 495; Guillot, 34,469 at p. 4, 781 So.2d at 868. It is good cause connected with employment for an employee to quit his job when the work becomes unsuitable due to unanticipated working conditions. Lewis, 540 So.2d at 495. However, mere dissatisfaction with working conditions does not constitute good cause unless the dissatisfaction is based on discrimination, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began. Id.; Guillot, 34,469 at p. 8, 781 So.2d at 870.
The parties do not cite and we have not found any jurisprudence directly on point with the facts of this case. However, this court and the Fourth Circuit have previously determined whether evidence concerning threats or acts of violence against employees constituted good cause as required by La. R.S. 23:1601(1)(a).
In Murphy v. State, through the Department of Employment Security, 385 So.2d 338 (La.App. 1 Cir. 3/31/80), this court found the following factual circumstances were sufficient to establish that an employee who quit because of fear for her safety was entitled to benefits. Murphy, 385 So.2d at 339-40. The claimant in Murphy worked as the sole attendant at a self-service gas station and received a series *694 of obscene phone calls at work, which she reported to her supervisor. Murphy, 385 So.2d at 339. The supervisor took steps to change the phone numbers for the station's two pay phones and offered the employee a job in a new gas station that was under construction once it was completed. Murphy, 385 So.2d at 399-40.
The calls continued. In one call, the caller described the clothes the employee was wearing and her hairstyle, which prompted the claimant to call her husband to sit with her. Murphy, 385 So.2d at 339. The next day, the caller said that she would be sorry she had done that, and thereafter the caller repeatedly called her and said it would be only so many more days until they got together. Finally, someone tried the back door, and the employee quit her job two weeks later. Id.
This court held that under these circumstances the employee had a very good reason to fear for her physical well-being and to leave. Murphy, 385 So.2d at 340. This court reversed the Board's decision that had affirmed the benefit disqualification, holding that the hearing officer's finding that the employee did not make a reasonable effort to maintain her employment was a conclusion of law and not a finding of fact. Id. In any event, this court found that the finding was unsupported by the evidence. Id.
The Fourth Circuit found that an employer's failure to support an employee who had been wrongfully assaulted by a customer constituted good cause within the meaning of the statute. Southern Hardware and Lumber Company, Inc. v. Vesich, 250 So.2d 780 (La.App. 4 Cir. 7/15/71). In Southern Hardware, the customer accused the employee of procrastinating in filling his order. The employee defended himself against the unfounded allegations and called the customer a "damn liar." Southern Hardware, 250 So.2d at 781. The customer then punched the employee, knocking out his tooth and splitting his lip. Id.
The employer responded to the incident by telling the employee that the "customer is always right." Although the employer did not fire the employee, he left it up to the employee's discretion whether the employee wanted to continue his employment. On the next working day, the employee resigned. Id.
The Fourth Circuit found that the sole reason the employee quit his job was due to his employer's response to the wrongful attack. Id. That court held that an employee terminating his employment because the employer failed to support him when a customer wrongfully committed an assault and battery on his person constituted "good cause" within the terms of the statute. Southern Hardware, 250 So.2d at 784.
Unlike the facts in Murphy and Southern Hardware, we find that facts in the instant matter, as found by the ALJ, are not sufficient to prove, as a matter of law, that Ms. Felder's leaving was for good cause as required by La. R.S. 23:1601(1)(a). In Southern Hardware, there was a factual finding that the employer failed to provide any support to the employee who was wrongfully attacked by a customer. In the instant matter, the administrative factual findings establish that the GHHC met with Ms. Felder, and that GHHC sent Ms. Marshall home at the meeting, giving her a two-day suspension. GHHC's actions were consistent with its response to the 2006 pushing incident.
In addition, GHHC's investigation and handling of the incident is consistent with the authority GHHC gives supervisors in handling disciplinary matters. In this regard, Ms. Felder testified that her recourse in a situation such as this "was to *695 send them home if their attitudes were bad." To do this, she testified that she "would have to go to upper management to get it approved to send them home for the day." Ms. Felder's testimony establishes that, in addition to sending Ms. Marshall home for the day, GHHC gave Ms, Marshall a two-day suspension without pay. Unlike the employer in Southern Hardware, there is no evidence that GHHC failed to support Ms. Felder after either of these incidents.
We also note that Ms. Felder testified that she was employed as a supervisor, which she stated came with the authority to send employees home for the day in situations such as this. Ms. Felder's testimony clearly establishes that addressing a subordinate employee's inappropriate conduct was part of her employment. There is no evidence that substantial changes were made to her job or working condition since she began employment with GHHC. While her testimony clearly establishes that she was not satisfied with the punishment GHHC imposed on Ms. Marshall on February 28, 2007, there is no evidence that GHHC treated Ms. Felder in a discriminatory, unfair, or arbitrary manner. To the contrary, the evidence shows that GHHC's actions were consistent with its response to the 2006 incident, and that Ms. Felder continued working as a supervisor after that incident.
We also find that the Board's action does not pass the reasonable standard. In Murphy, the facts showed that the claimant was subject to on-going harassment over a period of time, the steps taken by the supervisor did not stop the claimant from being harassed, and the harassment intensified after the claimant took steps to guard her safety, which facts this court found sufficiently established good cause as required by the statute. In this matter, the facts show that Ms. Marshall had accepted an offer to work at her mother's restaurant business, had given a two-week notice that her last day to work for GHHC would be Friday, March 2, 2007, and the incident occurred on Wednesday, February 28, 2007.
The facts also show that at the meeting held to address Ms. Marshall's conduct, GHHC sent Ms. Marshall home and gave her a two-day suspension. There are no factual findings or evidence showing that Ms. Marshall was returning to work on either Thursday or Friday or even that Ms. Marshall threatened to return to the workplace during the remainder of Ms. Felder's notice period. There are no facts or evidence showing that Ms. Marshall continued threatening Ms. Felder, or that she acted in a verbally or physically aggressive manner after she was disciplined. While the facts show that Ms. Marshall had engaged in a verbal argument with another employee earlier that day, there is no evidence that Ms. Marshall threatened or engaged in any threats of violence against that employee.
The facts also show that after the meeting, Ms. Felder worked the remainder of the day, completing her tasks, and leaving work instructions for her employer. There is no evidence that Ms. Felder requested her employer to provide her with security, or that she even asked someone to escort her from the workplace on Wednesday. Moreover, there are no facts or evidence showing that Ms. Marshall previously retaliated against Ms. Felder after she returned to work from her 2006 suspension. In fact, Ms. Felder testified that she continued to work with and supervise Ms. Marshall after the 2006 incident and suspension. Moreover, Ms. Felder testified that she had taken another job prior to this incident, and there is no evidence that Ms. Felder intended to continue working at GHHC after March 2, 2007. Finally, *696 we note that there are no facts or evidence in the record showing Ms. Felder would be subjected to working with Ms. Marshall during the remainder of her notice period.

CONCLUSION
We find, as a matter of law, these facts are insufficient to justify the action taken by the Board affirming the administrative law judge's decision and reversing the agency's determination, which assessed a February 28, 2007 disqualification under La. R.S. 23:1601(1)(a). Accordingly, we hold that the claimant, Tammy D. Felder, left her employment with Gonzales Home Health Care, L.L.C. without good cause attributable to a substantial change made to the employment by the employer. Under the procedure set forth in La. R.S. 23:1634, the case is remanded to the Board to enter an order assessing a February 28, 2007 disqualification to Ms. Felder's unemployment compensation benefit claim.
All costs of this appeal in the amount of $764.99 are assessed to appellees, Tammy D. Felder and the Louisiana Department of Labor, to be divided equally.
REVERSED AND REMANDED
NOTES
[1] Mr. Dickerson's testimony established December 29 as the date of the prior incident.
[2] Banks involved a determination of whether the employer carried its burden of proving that the employee was disqualified from benefits due to employee misconduct based on the statute prior to its amendment by Acts 1990, No. 750 § 1, which added a statutory definition for misconduct. Banks, 393 So.2d at 699.