# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-0526


**CHARLES R. KING**

**VERSUS**

**LOUISIANA WORKFORCE COMMISSION,
OFFICE OF REGULATORY SERVICES, ET AL.**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-11129
HONORABLE EDWARD BROUSSARD, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.


**AFFIRMED.**



**Saunders, J., dissents.**



**Charles R. King**
**1421 North Ave. H**
**Crowley, LA 70526-2418**
**(337) 783-8093**
**PLAINTIFF/APPELLANT:**
    In Proper Person

**J. Jerome Burden**
**Louisiana Workforce Commission**
**Legal Division**
**P. O. Box 94094**
**Baton Rouge, LA 70804-9094**
**(225) 342-3024**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana Workforce Commission,**
    **Office of Regulatory Services, et al.**

PETERS, J.

The plaintiff, Charles R. King, appeals the district court's affirmation of the judgment of the Board of Review of the Louisiana Workforce Commission, Office of Regulatory Services (Board of Review), disqualifying him from receiving unemployment compensation benefits. In accordance with our limited function on review, we affirm.

## DISCUSSION OF THE RECORD

Carmichael's Cashway Pharmacy (Carmichael's) in Crowley, Louisiana, hired Mr. King as a nighttime delivery driver to disperse medication and dietary supplements to various nursing homes over south Louisiana.[1] Mr. King first began work on February 2, 2007, and earned eleven dollars per hour. A normal work shift began at 6:00 p.m., and he averaged between seven and eight hours a night depending upon the location and number of deliveries.

The dispute giving rise to this litigation relates to a disagreement over the company vehicle breakdown policy. Mr. King asserts that at the time he was hired, Henry Helo, Carmichael's Human Resource Director, informed him that if he developed vehicle trouble while in the process of making his deliveries or while on the way home, Carmichael's would immediately send a driver to pick him up. He asserts that this policy changed to his detriment in April 2007, when he and the other drivers were informed by Harry Walker, Carmichael's fleet supervisor, that Carmichael's would only send a driver if a breakdown occurred before the driver had completed his route. Otherwise, the driver would be required to call a tow truck and wait for its arrival.

---

[1]The route included nursing homes in Baton Rouge, Kentwood, and Bogalusa, Louisiana on an as-needed basis and often covered approximately three hundred miles on a work shift.

Mr. Helo disagreed with Mr. King's initial understanding of the breakdown policy. According to him, the policy has always been that if a vehicle breaks down, the driver is supposed to immediately contact the dispatcher. The dispatcher would determine the driver's location and ascertain whether he had completed his route. If the route was not complete, the dispatcher would, in addition to contacting a tow truck, contact another driver in the area or an on-call driver to complete the disabled vehicle's route. Either way, the driver of the disabled vehicle was required to stay with the vehicle and ride home with the tow truck driver. The obvious purpose of this policy was to make certain that the essential medications were timely delivered to the nursing homes at issue. Given that Carmichael's operated approximately thirty vehicles and that breakdowns were common, it was critical that a policy protect the drivers and the required deliveries.

After the meeting with Mr. Walker, Mr. King met with Mr. Helo, who confirmed Mr. Walker's pronouncement of the company policy. This, in Mr. King's mind, placed the driver's safety at issue, and he related his concern to Mr. Helo. In order to accommodate Mr. King's concerns for his personal safety, Mr. Helo offered him a transfer to a shorter, local route. Mr. King declined the transfer, stating that the route was not the issue and that such a change would not address his safety concerns regarding the vehicle breakdown policy.

Having reached an impasse, Mr. Helo asked Mr. King if he intended to resign, and Mr. King responded that he would not resign over a safety issue. However, Mr. King carried the conversation further and inquired as to the consequences of him not appearing for work. Mr. Helo informed him that a failure to appear at work on three consecutive days would result in his termination from employment with the company.

2

Mr. King then gave his office key, fuel card, and cellular telephone to Mr. Helo and informed him that he would not be at work the next three days. Carmichael's terminated his employment as of May 26, 2007. According to Mr. Helo, there was no other way for the company to address Mr. King's concerns without severely impacting its operations.

Following his termination, Mr. King sought and was granted unemployment compensation benefits through the initial administrative process based on a finding that pursuant to the Louisiana Employment Security Law, he had good cause to leave his employment position. Carmichael's appealed this decision to the Appeals Tribunal, and, after a hearing, the administrative law judge (ALJ) rendered an opinion finding that Mr. King had engaged in no misconduct relating to his employment, but that because there was no appreciable difference in the working conditions between when Mr. King was hired and his date of termination, he had terminated his employment for personal reasons. That finding, according to the ALJ, disqualified him from receiving unemployment compensation benefits.

After both the Board of Review and the Fifteenth Judicial District Court affirmed the ALJ's decision, Mr. King perfected this appeal. In his appeal, he asserts that the findings of the ALJ and the Board of Review are not supported by sufficient evidence and are not reasonable as a matter of law, and that good cause for leaving his employment existed in this instance.

**OPINION**

Our scope of review is set forth in La.R.S. 23:1634(B), which provides in pertinent part that, "the findings of the board of review as to the facts, if supported

3

by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."

> Based on this statutory provision, the jurisprudence has defined judicial review in cases such as this one as requiring a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. *Banks v. Administrator, Dept. of Employment Security of the State of Louisiana*, 393 So.2d 696 (La.1981); *Marchand v. Forster*, 37,222 (La.App.2d Cir.6/25/03), 850 So.2d 941. Judicial review does not permit the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts. *Marchand v. Forster, supra.*

*Lafitte v. Rutherford House, Inc.*, 40,395, p. 4 (La.App. 2 Cir. 12/14/05), 917 So.2d 684, 687.

We will review this matter within those parameters.

Louisiana Revised Statutes 23:1601(1)(a) provides that an employee will be disqualified from receiving unemployment compensation benefits if it is determined that "he has left his employment . . . without good cause attributable to a substantial change made to the employment by the employer." Generally, an employee's dissatisfaction with his working conditions does not constitute "good cause" for leaving his employment pursuant to La.R.S. 23:1601(1)(a). *Guillot v. Arbor Group, LLC*, 34,469 (La.App. 2 Cir. 3/2/01), 781 So.2d 864. However, dissatisfaction will constitute good cause if "based on discriminatory, unfair or arbitrary treatment, or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's position began." *Id.* at 870.

Mr. King testified that the purported change in policy was a substantial change in his employment situation because it constituted a shift from concern for driver safety to a concern for only delivery of the medications, leaving the driver to fend for himself. He stated that he questioned Mr. Helo concerning the pickup policy in the

4

initial employment interview, and his understanding of that policy satisfied him because it reflected that Carmichael's was concerned about the safety of its drivers.

The problem with Mr. King's position is that the key factual finding of the ALJ and the Board of Review is that there was no appreciable difference in Mr. King's working conditions when comparing the day of hire versus the day of termination. Thus, the ALJ and the Board of Review accepted Mr. Helo's assertion that the vehicle breakdown policy had not changed and that Mr. Walker had not changed the policy, but had simply stated the existing policy. Thus, Mr. King terminated his employment for personal reasons rather than for good cause attributable to a substantial change Carmichael's had made in his employment.[2] Specifically, the ALJ's opinion stated the following facts:

> The claimant quit his employment because he was dissatisfied with the company policy on how he was to report in should he experience a vehicle breakdown. The claimant may have expressed dissatisfaction with that policy, but the fact remains that his working conditions at the time of the separation were not appreciably different from those to which he agreed when hired. His leaving was for a personal reason and under disqualifying circumstances; therefore [he] is not entitled to benefits.

After reviewing the record, we find that the ALJ's factual findings, as adopted by the Board of Review, are supported by sufficient evidence and that the disqualification of Mr. King from receiving unemployment compensation benefits was justified as a matter of law as his voluntary termination was without good cause.

---

[2]Although each employee was provided with an employee packet when hired, and a policies and procedures manual was made available to each, the evidence is to the effect that the vehicle breakdown policy was not addressed in either document. Thus, the only evidence of the policy and possible changes thereto is the testimony of Mr. King and Mr. Helo.

## DISPOSITION

For the foregoing reasons, we affirm the denial of unemployment benefits to Charles R. King in all respects.  We assess all costs of this appeal to Charles R. King.

**AFFIRMED.**